ARROWHEAD DEVELOPMENT COMPANY v LIVINGSTON
COUNTY ROAD COMMISSION

Docket No. 63742. Argued October 7, 1980 (Calendar No. 6).—Decided
June 28, 1982.

Arrowhead Development Company brought an action seeking to
enjoin the Livingston County Road Commission from requiring
Arrowhead, as a condition of approval of a subdivision plat
submitted by Arrowhead, to open a cul-de-sac so as to create an
intersection with a county road, and from requiring Arrowhead
to make certain improvements at its own expense on the
county road, which is located entirely outside the proposed
subdivision. The Livingston Circuit Court, Paul R. Mahinske,
J., denied relief and granted the commission's motion for
accelerated judgment, concluding that the commission had the
authority to impose both requirements. The Court of Appeals,
M. J. Kelly, P.J., and Bashara and R. B. Burns, JJ., affirmed
(Docket No. 78-2373). The plaintiff appeals.

In a unanimous opinion by Justice Ryan, the Supreme
Court *held:*

A county road commission does not have the authority to
require a subdivision developer to make improvements to a
county road located entirely outside a platted subdivision as a
condition precedent to approval of the plat.

1. The section of the state constitution which provides for
liberal construction of laws pertaining to counties in favor of
counties, and for inclusion in the powers granted to counties by
the constitution and laws those fairly implied and not prohib-
ited by the constitution, does not grant authority to county
road commissions to make requirements of subdivision owners
or developers without limitation. At most, it mandates that

REFERENCES FOR POINTS IN HEADNOTES
[1-4] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions §§ 437, 560.
[3, 4] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions §§ 547, 579, 580.
Widening of city street as local improvement justifying special
assessment of adjacent property. 46 ALR3d 1276.

provisions of law addressing the powers of the road commissions shall be liberally construed in their favor.

2. A county road commission is created under the provisions of the county road law and has no power other than that conferred by the statute. The section of the county road law which imposes an affirmative duty on a commission to keep all county roads in reasonable repair so as to be reasonably safe and convenient for public travel neither explicitly nor implicitly authorizes the commission to discharge that duty by imposing the costs of repairs or improvements upon the developers of nearby subdivisions. Rather, it specifies borrowing and taxation as permissible methods of financing county road improvement.

3. Nor does the provision of the Subdivision Control Act which authorizes a commission to require a developer to provide for safe roads within a proposed subdivision confer the power to require the developer to provide for safe roads outside the subdivision or to impose the costs of improvement upon the developer. Under the act, a commission may condition approval or ground rejection of a plat only on the degree of compliance with the requirements enumerated in the act. The requirements must be read within the context of the entire act, and the words and phrases used must be assigned meanings in harmony with the statute as a whole and construed in the light of history and common sense. So read, the sections of the act which require that roads within a subdivision which enter existing county roads be designed to provide adequate traffic safety cannot be extended to roads outside the subdivision.

4. Historically, costs of police and fire protection, traffic signals, schools, public lighting, road widening, and all other public services made necessary by a new residential community have not been imposed on the subdivision developer. The costs are met by taxation and special assessment of benefited individuals and properties. Imposing the burden of improving a public road on a nearby developer would be a notable departure from the historic manner of funding alterations to public property and would require an explicit legislative intention.

92 Mich App 31; 283 NW2d 865 (1979) reversed.

1. COUNTIES — ROAD COMMISSIONS — SUBDIVISIONS — PUBLIC IM-
   PROVEMENTS.

   A county road commission does not have the authority to require a subdivision developer to make improvements to a county road located entirely outside a platted subdivision as a condition precedent to plat approval.

2. COUNTIES — ROAD COMMISSIONS — SUBDIVISIONS — CONSTITU-
   TIONAL LAW.

   The state constitution provides for the liberal construction of
   laws pertaining to counties in favor of the counties, but that
   does not grant authority to a county road commission to make
   unlimited requirements of subdivision owners or developers as
   a condition of approval of a plat (Const 1963, art 7, § 34).

3. COUNTIES — ROAD COMMISSIONS — MAINTENANCE OF ROADS —
   FINANCING.

   The county road law requires county road commissions to keep
   all county roads in reasonable repair so as to be reasonably
   safe and convenient for public travel; it neither explicitly nor
   implicitly authorizes a commission to discharge that duty by
   imposing the costs of repairs or improvements upon the devel-
   opers of nearby subdivisions, but rather specifies borrowing and
   taxation as permissible methods of financing repairs (MCL
   224.19-224.21; MSA 9.119-9.121).

4. COUNTIES — ROAD COMMISSIONS — SUBDIVISIONS — PUBLIC IM-
   PROVEMENTS.

   The provision of the Subdivision Control Act which authorizes a
   county road commission to require a subdivision developer to
   provide for safe roads within a subdivision and safe intersec-
   tions with existing county roads, when read within the context
   of the entire act, cannot be extended to authorize the commis-
   sion to require the developer to provide for safe roads outside
   the subdivision or to impose the cost of improvement of existing
   roads occasioned by the subdivision upon the developer (MCL
   560.105, 560.106, 560.181, 560.183; MSA 26.430[105],
   26.430[106], 26.430[181], 26.430[183]).

*Michael J. McGivney* for plaintiff.

*Laird & Grace* (by *John R. Laird* and *Sheila
Schwartz)* for defendant.

RYAN, J. Arrowhead Development Company
sought to develop 140 acres of property in Living-
ston County into a residential subdivision. A por-
tion of the tract to be subdivided lies along Chilson
Road, a county road, and abuts Chilson at two
locations, one along the southern boundary of the

subdivision and the other along the western boundary.[1]

When the proposed plat was submitted to the Livingston County Road Commission for approval, it provided for two access roads into the subdivision, both along the Chilson Road southern boundary of the tract: Pawnee Trail and Kiowa Trail. For purposes of safety, reduced road grades and improved road layout, the commission required that a third access road be added and directed that Navajo Trail, which was originally proposed as a cul-de-sac, be opened to create an intersection with Chilson Road. Because a steep hill crested at a point on Chilson Road somewhat southeast of the newly proposed intersection, a hazardous condition in the nature of a sight obstruction was created, particularly for traffic entering and exiting the subdivision at Navajo. Consequently, as a further condition of approval of the plat, the commission required that the developer remove the hill and perform related regrading and resurfacing work on Chilson Road, although the site was located entirely outside the proposed subdivision and no lots are platted along the road at that point.

Instead of making the improvement immediately, appellant posted a performance bond whereupon the subdivision plat was approved by the commission and appellant proceeded with the development.

Sometime later, the commission notified appellant that unless it took action immediately to eliminate the hill and regrade Chilson Road, the commission would remove the hazard itself and seek reimbursement under the terms of the bond. That prompted appellant to file suit to enjoin the commission both from requiring that the Navajo Trail cul-de-sac be opened and from requiring that appellant make the improvements on Chilson Road.

The trial court upheld the validity of both requirements. Appellant appealed only the determination that the commission had the authority to require appellant to make the improvements on Chilson Road.

The Court of Appeals affirmed the trial court's decision[2] and plaintiff is before us on an appeal from that judgment.

The case presents two related issues:

1) Whether a county road commission has authority to require a subdivision developer to make improvements on a county road located entirely outside the platted subdivision as a condition precedent to plat approval and, if so,

2) Whether the exercise of that authority in this instance is constitutional under US Const, Am XIV and Const 1963, art 1, § 17 which prohibit a taking of property without due process of law.

We answer the first question in the negative and thus find it unnecessary to address the second question.

I

Arrowhead contends that as a matter of law the commission lacks the power to require it to make the improvement demanded in this case because the site involved is a county road not within the subdivision. The commission counters that on the basis of Const 1963, art 7, § 34, the county road law,[3] and the Michigan Subdivision Control Act of 1967,[4] the commission must be deemed to have the

---

[2] *Arrowhead Development Co v Livingston County Road Comm,* 92 Mich App 31; 283 NW2d 865 (1979).

[3] MCL 224.1 *et seq.;* MSA 9.101 *et seq.*

[4] MCL 560.101 *et seq.;* MSA 26.430(101) *et seq.*

power to require Arrowhead to pay for the off-site improvement to Chilson Road.

We disagree with the commission's interpretation of the state constitutional provisions and the cited statutory authority and conclude that it is without authority to condition approval of the proposed plat upon removal of the Chilson Road hill by Arrowhead.

A

Article 7, § 34 of the Michigan Constitution of 1963 provides:

"The provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor. Powers granted to counties and townships by this constitution and by law shall include those fairly implied and not prohibited by this constitution."

We know of no authority, and appellant does not invite our attention to any, standing for the proposition that this constitutional provision is a grant of authority to county road commissions to make any requirement whatever of subdivision owners or developers. While the provision speaks of "provisions of * * * law concerning counties" and "[p]owers granted to counties * * * by this constitution and by law", it says nothing about county road commissions.

We think the most that can be claimed for art 7, § 34, Const 1963 is that it mandates that provisions of law which do address the powers of county road commissions "shall be liberally construed in their favor".

We turn, then, to the two statutes which address

such powers: The county road law and the Michigan Subdivision Control Act of 1967.

### B

The county road law, which is a part of the general highway law, provides, *inter alia,* for the adoption of a county road system and the creation of a county road commission, and defines the powers and duties of such commission. A county road commission draws its legal life from the county road law and, as a creature of that legislation, the commission has no power save that which is legislatively conferred.

The commission claims that a liberal reading of the county road law, particularly § 21,[5] which imposes on the commission an affirmative duty to "keep in reasonable repair, so that they shall be reasonably safe and convenient for public travel, all county roads", reveals an implicit grant of authority to the commission to exact payment for an off-site county road improvement made necessary by the development of the appellant's nearby subdivision. While there is no dispute that the Legislature has imposed this duty on counties, we are unable to find any basis to conclude that the statute either explicitly or implicitly authorizes the commission to discharge that duty by imposing the costs of county road improvements upon the developers of nearby subdivisions. To the contrary, the provision of the county road law which imposes this affirmative duty upon the road commission, MCL 224.1 *et seq.;* MSA 9.101 *et seq.,* specifically provides that the permissible methods of financing county road improvement are borrowing and taxation. Nowhere in the statute is there to be found authorization for exacting the cost of a

_____

[5] MCL 224.21; MSA 9.121.

county road improvement from a subdivision developer, and we think none can be fairly implied.

## C

The other authority cited by appellee for requiring the appellant to sustain the cost of the repairs to Chilson Road is the Michigan Subdivision Control Act of 1967.[6] The commission argues that the provisions of the act, specifically § 183, should be liberally construed to recognize in the commission authority to require that the cost of the cutdown and regrading on Chilson Road be borne by Arrowhead.[7] The claim is that since § 183 of the act authorizes the commission to require that the subdivision developer provide safe roads in a proposed plat and since the act contains no explicit restrictions on that authority, and, further, since this absence of prohibiting language is consistent with the Legislature's intent to give county road commissions broad authority to carry out their public duties, it follows therefore that the commission has the power to require Arrowhead to make the improvements to Chilson Road being demanded in this case.

We think that argument reveals an inappropriately narrow reading of the act and a misapprehension of its proper purpose and application. It is the act itself which declares and defines the character and scope of the commission's authority over a subdivision developer and none exists independently of the act. A contextual reading of the lengthy and detailed statute, particularly §§ 105, 106 and 181, as well as 183, suggests that even the most liberal construction reasonably warranted

[6] See fn 4 *supra*.

[7] The parties agree that all of the work to be done on Chilson Road is entirely outside the subdivision tract.

does not justify the commission's claim of authority to impose the cost of the Chilson Road improvements upon the appellant. To find that authority in the name of liberal construction would require, in this instance, more than mere construction; it would require that we confer upon the commission authority which the Legislature did not give it.

Section 105 of the act defines the requirements upon which approval of preliminary and final plats *shall* be conditioned. In relevant part, the section states:

"Approval of preliminary and final plats shall be conditioned upon compliance with:

"(a) The provisions of this act.

"(b) Any ordinance or published rules of a municipality or county adopted to carry out the provisions of this act.

"(c) Any published rules of a * * * county road commission, or county plat board adopted to carry out the provisions of this act." MCL 560.105; MSA 26.430(105).

* * *

Section 106 declares:

"No approving authority or agency having the power to approve or reject plats shall condition approval upon compliance with, or base a rejection upon, any requirement other than those included in section 105." MCL 560.106; MSA 26.430(106).

Since under the act the county road commission is an "approving authority",[8] it may not "condition approval * * * or base a rejection [of the Arrowhead plat] upon, any requirement other than those

[8] See MCL 560.113; MSA 26.430(113), MCL 560.147; MSA 26.430(147), MCL 560.164-560.165; MSA 26.430(164)-26.430(165).

included in § 105". Section 183 is the only "[provision] of this act" which speaks to the requirements which may be imposed upon a subdivision developer by a road commission as conditions for approval of a proposed plat. Consequently, only the requirements specifically delineated in that section can support the commission's conditional approval of the Arrowhead plat.[9]

Section 183, in relevant part, provides:

"(1) The county road commission may require the following as a condition of approval of final plat for all highways, streets and alleys in its jurisdiction or to come under its jurisdiction and also for all private roads in unincorporated areas:

"(a) Conformance to the general plan, width and location requirements that the board may have adopted and published.

"(b) *Adequate provision for traffic safety in laying out drives which enter county roads and streets, as provided in the board's current published construction standards.* [Emphasis added.]

"(c) Proper drainage, grading and construction of approved materials of a thickness and width provided in its current published construction standards.

"(d) Submission of complete plans for grading, drainage and construction, to be prepared and sealed by a civil engineer registered in the state.

"(e) Installation of bridges, culverts and drainage structures where it deems necessary.

"(f) Completion of all required improvements relative to streets, alleys and roads, or a deposit by the propri-

---

[9] While § 105(c) speaks of published rules of the county road commission as justification for imposing conditions prior to plat approval, such rules must be "adopted to carry out the provisions of [the act]". Thus, the road commission's substantive authority is not increased merely by publishing rules. Any such rules must implement an objective properly within the commission's authority pursuant to § 183, the only provision in the act vesting the commission with authority over a subdivision developer.

In any event, we are not apprised of the existence of any road commission rules authorizing the exaction demanded in this case.

etor with the board in the form of cash, a certified check or irrevocable bank letter of credit, whichever the proprietor selects, or a surety bond acceptable to the board, in an amount sufficient to insure completion within the time specified." MCL 560.183; MSA 26.430(183).

The commission relies primarily upon the emphasized subsection (1)(b) of § 183 as justifying its demand that Arrowhead sustain the cost of the repairs to Chilson Road. In its brief, the commission declares that "[t]he statute [§ 183(1)(b)] expressly authorizes a county road commission to condition approval of a plat upon certain exactions to insure the safety of those entering existing county roads from a proposed subdivision street".[10] While we think the appellant claims more for the language of subsection (1)(b) than is there to be found,[11] there is still other reason to conclude that in defining the powers of a road commission to impose requirements upon developers as conditions for approval of proposed plats, the Legislature did not intend to permit the exaction demanded in this case.

Section 183 does not stand alone. It exists and must be read in context with the entire act, and the words and phrases used there must be assigned such meanings as are in harmony with the whole of the statute, construed in the light of history and common sense.

Sections 181 through 184 are concerned with the imposition of conditions for the approval of a

---

[10] Appellee's brief, p 9.

[11] Subsection (b) authorizes a county road commission to require "[a]dequate provision for traffic safety in *laying out drives* which enter county roads". (Emphasis added.) Arguably, that is something less than "insur[ing] the safety of those entering the existing county roads".

proposed subdivision plat by municipal, county and state road authorities.

Section 181 provides:

"All streets, alleys, roads and highways shown, or required to be shown on a plat shall comply with the requirements of sections 181 to 185 as a condition of approval of the final plat." MCL 560.181; MSA 26.430(181).

Section 182 deals with conditions which may be imposed by municipalities, § 183 with those imposed by county road commissions, and § 184 with those imposable by the state highway department.[12]

A "plat", as used in § 181, is a term of art and is defined in § 102(a) of the act as "a map or chart of a subdivision of land". MCL 560.102(a); MSA 26.430(102)(a). Section 102(d) in turn defines "subdivision" as follows:

"(d) 'Subdivide' or 'subdivision' means the partitioning or dividing of a parcel or tract of land by the proprietor thereof".

Since only the parcel or tract of land in which the proprietor has an ownership interest can be partitioned or divided by him, the most reasonable construction that can be given the § 181 phrase "roads * * * shown or required to be shown on a [map of a subdivision]" is that it has reference to roads *within* a proposed subdivision, that is, the area to be divided or partitioned. Notwithstanding that in practice maps of proposed subdivision plats also include surrounding roads and highways as reference points to fix the location of the proposed tract to be divided or partitioned, it is only the

---

[12] As yet, there is no § 185 in the act.

streets and roads within the tract to be developed or subdivided that are actually platted. While in this case the map containing the subdivision property to be platted shows that portion of Chilson Road posing the problem, that road is not within the subdivision and no provision in the act requires that the portion of Chilson Road to be cut down and regraded be shown on the plat. See generally MCL 560.135-560.141; MSA 26.430(135)-26.430(141).

In having, by the language of § 105, explicitly subjected roads within the subdivision to the requirements of § 183(1)(b), we think the Legislature cannot be said to have intended implicitly to extend the requirements of § 183(1)(b) to roads outside the subdivision which are not "required to be shown on a plat".

While under § 183(1)(b) the commission could have required that Arrowhead lay out Navajo Trail in a way which would locate its intersection with Chilson Road at a safe distance from the hazardous sight obstruction, it was not free, under color of § 183, to require repairs to be made on Chilson Road at the expense of the subdivider as a condition of approval of a plat in which the Navajo Trail-Chilson intersection was laid out in a manner posing a traffic hazard. That is particularly so since the plat as submitted called for a cul-de-sac terminating Navajo Trail at Chilson Road, but the commission required Arrowhead to eliminate the cul-de-sac and open Navajo Trail, creating the concededly dangerous intersection.

Although § 183 does not itself contain an explicit restriction on the commission's authority to require off-site road improvements, the fact that it does not contain an explicit or fairly implied grant of such authority suggests that none was intended

by the Legislature, especially since §§ 105 and 106 specifically delineate the requirements the commission may make of subdividers. We conclude that § 183 does not authorize the action of the commission in this case.

We are fortified in the conclusion that § 183 does not empower the commission to impose upon the appellant the duty to sustain the cost of the off-site road improvements in this case by the fact that nowhere does there exist any statutory provision defining suitable standards governing cost allocation of off-site improvements. Apart from the constitutionality of the proposed exaction in this case, a question we neither reach nor decide, it is clear that it would be impermissible to impose the entire cost of an off-site improvement on a single subdivision developer where other persons or property would be specially benefited. The absence of a statutory provision establishing standards and procedures for such apportionment is indicative of a legislative assumption that the responsibilities of a subdivision developer do not extend beyond the borders of the subdivision itself unless explicitly imposed by the Legislature.

II

Aside from this contextual reading and construction of the act, we think the conclusion we have reached as to the intent of the Legislature concerning the burden to be imposed upon subdivision developers has an historic and common-sense basis. Where would an interpretation to the contrary take us?

The commission relies heavily on the argument that the need to level the obstructing hill on Chilson Road is caused by the existence of the

subdivision and as such is a "problem" solely attributable to Arrowhead. Consequently, it is argued, Arrowhead must pay for its elimination. The same argument can be made, however, to justify the cost of police and fire protection, traffic signals, public school facilities, public lighting, road widening and all other public services made necessary by the existence of a new residential community. These are not costs historically imposable upon the subdivision developer. They are met by taxation and special assessments to benefited individuals and properties. Similarly, the regrading of a county road adjacent to a new subdivision development, in order to safely accommodate traffic generated by the new community, is a public obligation. A legislative intention to impose such a burden upon a nearby private developer would be a notable departure from the historic manner of funding alterations to public property, and we think it would have made such an intention explicit.

We hold that the commission exceeded its limited statutory powers in conditioning the plat approval upon Arrowhead's agreement to pay for the off-site county road improvement. Consequently, the judgment of the Court of Appeals is reversed.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, and BLAIR MOODY, JR., JJ., concurred with RYAN, J.