*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

NANCY J. WILSON,

        Petitioner-Appellant,

v

CITY OF GRAND RAPIDS,

        Respondent-Appellee.

FOR PUBLICATION
February 9, 2023
9:05 a.m.

No. 358657
Tax Tribunal
LC No. 21-000183-TT

Before: M. J. KELLY, P.J., and SHAPIRO and PATEL, JJ.

PATEL, J.

Petitioner Nancy Wilson appeals challenging the Tax Tribunal's denial of a principal residence exemption (PRE) for the 2019 and 2020 tax years. Although the tribunal agreed with Wilson that her home was a single-family residence and not a duplex, the tribunal held that she was nonetheless disqualified from claiming a PRE because she had a roommate for the applicable tax years. The tribunal reasoned that because Wilson's roommate had access to common areas of the residence, Wilson was "renting" or "leasing" 50% or more "of the square footage of the residence," thus disqualifying her from claiming the PRE. MCL 211.7dd(c). The Tax Tribunal's interpretation of MCL 211.7dd(c) was erroneous. Renting a room in one's home to a roommate, with access to common areas, is not the equivalent of renting 50% or more of the square footage of the residence and does not disqualify a homeowner from the PRE. We reverse the tribunal's decision and remand for entry of a judgment granting Wilson's request for a PRE for the 2019 and 2020 tax years.

## I. FACTS AND TRIBUNAL PROCEEDINGS

Wilson is the owner of property located in Grand Rapids, Michigan (the property). She purchased the property in 2006 and, since 2007, after converting the property from a duplex to a single-family residence, Wilson has applied for and received a PRE. During this time, it is undisputed that Wilson lived in the residence as her primary residence. But she also rented rooms to various roommates during those years. The roommates' rent obligations and responsibilities were controlled by "roommate agreements."

Wilson received a PRE until 2020, which is when her relationship with her then-roommate soured. As the relationship devolved, the roommate threatened to call the city and report Wilson for code violations and false tax claims. The roommate made a video purporting to show that the residence was still a duplex and not a single-family home and, as a result, not eligible for the 100% PRE Wilson was claiming.

Based on the roommate's complaints, the city's code compliance department and the tax assessor got involved. Following a few remedial measures, Wilson's residence was cleared by the code compliance department as a single-family residence. The city's tax assessor, however, was not so easily mollified. After an investigation, the city sent Wilson a notice informing her that the residence was only eligible for a 50% PRE because it was a two-dwelling unit (a duplex).

Wilson appealed the assessment to the Tax Tribunal. She argued that her property is a single-family residence that she resided in and shared with roommates, not a duplex. She submitted that she rented a room to the roommate, but then allowed access to and use of the rest of the house. Wilson submitted evidence to support her claim that the property was a single-family residence: utilities were shared between Wilson and her roommates and not metered separately; the property had a single recycling bin shared by all; all mail addressed to the property was sent to the same address, without any demarcation of separate units; and letters from previous roommates who attested that they believed they were renting a room in a home, not a duplex unit. Wilson also submitted the roommate agreement she had with the disgruntled renter. That agreement: used the word "roommate" throughout; specified that friends were welcome to visit but boyfriends could not live or pay rent there; and that "[r]oommates have full access to the common areas (porches, backyard, garage, storage areas, entry ways)." Although the roommate agreement did not delineate other areas in the house, such as the living room and kitchen, as "common areas," it is undisputed by the parties that the roommates had access to these areas as well. The agreement did not specify what areas of the home the roommate was renting (i.e. whether she was renting a single room or a suite of rooms consistent with a duplex unit). Wilson maintained that this evidence established that she rented out a room in her house, with access to other shared living areas, not a separate duplex unit.

The city, in response, submitted evidence that it believed established that the property was a duplex. The city submitted: property records from when Wilson originally purchased the property in 2006; her initial application and claim of a 50% PRE based on occupancy of one part of a duplex; a 2007 document showing that the property was converted to a single-family residence and Wilson's application for 100% PRE; copies of the 2021 PRE denial; emails and text messages from the disgruntled roommate; a video taken by the roommate purporting to show that the property was a duplex; and various property assessment notes and information. Based on this evidence, the city argued that the property was a two-dwelling unit, the former roommate had been renting a suite of rooms consistent with a duplex, and Wilson did not qualify for a 100% PRE. The city asked the tribunal to affirm its assessment of 50% PRE, consistent with the rental of one part of a duplex.

The tribunal considered the submitted evidence and, after a hearing, accepted Wilson's argument that the property was, in fact, a single-family residence and not a duplex. Nevertheless, the tribunal denied the PRE because it concluded that Wilson was renting 50% or more of the total square footage of the house. The tribunal found Wilson's evidence reliable and made the factual

finding that Wilson owned a single-family residence and that she rented rooms in her residence to various roommates. The tribunal found that those roommates had full access to the house except for Wilson's bedroom or the bedrooms of other roommates. The tribunal further found that "[s]aid 'full access' to their bedrooms and all common areas of the house consisted the renting of 50% or more of the total square footage of the living space in that single-family house."

Based on these ostensibly factual determinations, the tribunal concluded that Wilson was not entitled to claim any PRE under MCL 211.7dd(c) for the 2019 and 2020 tax years. The tribunal issued a Proposed Opinion and Judgment outlining its findings of fact and legal analysis.

Wilson exercised her right to file exceptions to the Proposed Opinion and Judgment. In her exceptions, Wilson agreed with all the tribunal's findings of fact except for the finding that renting a room in her home to a roommate, and allowing access to common areas, constituted renting 50% or more of the total square footage of living space in that single-family house. Wilson also disagreed with the tribunal's conclusion that she was not entitled to claim a PRE.

The tribunal was not swayed by Wilson's arguments and issued a Final Opinion and Judgment adopting the previous proposal. Wilson now appeals that decision.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

In the absence of fraud, this Court reviews the Michigan Tax Tribunal's decision for "misapplication of the law or adoption of a wrong principle." *EldenBrady v City of Albion*, 294 Mich App 251, 254; 816 NW2d 449 (2011) (quotation marks and citation omitted). "[F]actual findings are conclusive if supported by competent, material, and substantial evidence on the whole record." *Benedict v Dep't of Treasury*, 236 Mich App 559, 563; 601 NW2d 151 (1999) (quotation marks and citation omitted). But this Court reviews the tribunal's decision de novo if it involves matters of statutory interpretation. *EldenBrady*, 294 Mich App at 254.

### B. RENTING OR LEASING 50% OR MORE OF THE TOTAL SQUARE FOOTAGE OF LIVING SPACE

Under the General Property Tax Act (GPTA), MCL 211.1a *et seq*., "all property, real and personal, within the jurisdiction of this state, not expressly exempted, shall be subject to taxation." MCL 211.1. The GPTA includes the PRE, also known as the "homestead exemption," which is governed by MCL 211.7cc and MCL 211.7dd. See *EldenBrady*, 294 Mich App at 256. Specifically, "[a] principal residence is exempt from the tax levied by a local school district for school operating purposes . . . if an owner of that principal residence claims an exemption as provided in this section." MCL 211.7cc(1). The parties do not dispute that Wilson is "an owner" who "claims an exemption" and that she followed the procedural steps for claiming the exemption under the statute. The issue is whether Wilson's property qualifies as a "principal residence."

"Principal residence" is defined in MCL 211.7dd(c), which states in pertinent part:

"Principal residence" means the 1 place where an owner of the property has his or her true, fixed, and permanent home to which, whenever absent, he or she

-3-

intends to return and that shall continue as a principal residence until another principal residence is established . . . . *Except as otherwise provided in this subdivision, principal residence also includes any portion of a dwelling or unit of an owner that is rented or leased to another person as a residence as long as that portion of the dwelling or unit that is rented or leased is less than 50% of the total square footage of living space in that dwelling or unit.* [Emphasis added.]

Under this statute, a residence loses its status as a "principal residence," even if it is a taxpayer's "true, fixed, and permanent home," if an owner rents or leases 50% or more of the total square footage of the living space in the residence.

Again, the parties do not dispute that the property is Wilson's "true, fixed, and permanent home to which, whenever absent . . . she intends to return[.]" The tribunal held, and Wilson agrees, that the property is a single-family residence and is owned and occupied by her, that she rented out rooms in the house to roommates, and that the roommates had access to the common areas in the house.[1] The dispute centers around whether, by renting a room in her home and allowing roommates to have access to common areas, Wilson has "rented or leased" 50% or more "of the total square footage of living space" in her house.

The tribunal made a "factual finding" that the roommates' " 'full access' to their own bedrooms and all common areas of the house constituted the renting of 50% or more of the total square footage of the living space in that single-family house." The tribunal's determination was wrongly designated as a "factual finding;" it is, in fact, an interpretation of MCL 211.7dd(c). The *factual findings* underpinning the tribunal's legal determination are that Wilson had a roommate for the applicable tax years, the roommate rented a room in the house, and had access to common areas around the house, including living areas and kitchen. These findings are not disputed on appeal. The tribunal then concluded that renting a room with access to common areas constitutes renting or leasing 50% or more of the house. This was a legal statutory interpretation of MCL 211.7dd(c), *not* a fact determination. As such, we review this legal determination de novo. *EldenBrady*, 294 Mich App at 254.

"The principal goal of statutory interpretation is to give effect to the Legislature's intent, and the most reliable evidence of that intent is the plain language of the statute." *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 360-361; 917 NW2d 603 (2018). "[T]he words and phrases used . . . must be assigned such meanings as are in harmony with the whole of the statute, construed in the light of history and common sense." *Arrowhead Dev Co v Livingston Co Rd Comm*, 413 Mich 505, 516; 322 NW2d 702 (1982). Because the language of the tax exemption at issue is unambiguous, our task is to discern the ordinary meaning of the statutory text considered as a whole. *TOMRA of N Am, Inc v Dept of Treasury*, 505 Mich 333, 339; 952 NW2d 384 (2020).

---

[1] Although the city disputed the property's designation as a single-family residence, it did not appeal the tribunal's determination.

The legal issue presented in this case is whether an owner renting a single room in a house to a roommate, while allowing access to common living areas, constitutes renting or leasing 50% or more of the total square footage of living space in the residence. We hold that it does not.

As commonly understood, the verbs "rent" and "lease" both connote possession *and* use of the premises. Having access to and use of a common area is not the same as "renting" or "leasing" that space. This Court, while examining the relative duties of a landlord to visitors on property, explained that a "landlord grants to tenants rights of exclusive possession to designated portions of the property, but the landlord retains exclusive possession of the common areas. The landlord grants to tenants a license to use the common areas of the property. Tenants pay for this license as part of their rent." *Stanley v Town Square Co-op*, 203 Mich App 143, 147; 512 NW2d 51 (1993). This tenet directly informs the issue here. While *Stanley* dealt with common areas in a cooperative, the same principles apply with respect to a room rented in a residence. Wilson's roommates had exclusive possession of designated areas, the rented rooms, but only a license to use the common areas of the residence. It is inaccurate to say that a roommate, by renting a single room in the residence, had in fact rented or leased the entire square footage of the house.

*Stanley*, which examined principles of landlord-tenant law, is germane to our interpretation of the words "rented" and "leased" in MCL 211.7dd(c), a part of the GPTA. Incorporating principles of landlord-tenant law, which informs the rudimentary understanding of what renting or leasing property means, is critical to understanding what these terms mean within the GPTA. It is undisputed that the relevant portion of MCL 211.7dd(c) refers to renting or leasing real property. The analysis of this relationship provided by *Stanley* is therefore relevant.

Wilson's intent to retain possession over the common areas in the residence is also evident in the roommate agreement, a document that was submitted to the tribunal by both Wilson and the city.[2] Wilson was mindful about who would be sharing her home, and, to that end, the agreement specifies that the roommate's boyfriend is not allowed to live in the residence. The agreement also states that the thermostat could not be set higher than 68 degrees in colder months, again showing that Wilson retained possession over common areas. The agreement further states that the roommate could not make permanent changes to the room rented; she could, however, hang pictures, blinds, or curtains *with Wilson's help*. All of these conditions in the agreement show that Wilson retained possession over the residence. Although the roommate could access common areas, she did not have the ability to change those areas. She could not, for example, decide to

---

[2] Notably, the "roommate agreement" is ambiguous regarding what areas of the home Wilson rented to the roommate. It does not specify whether the agreement was for the rental of a single room or a suite of rooms. The tribunal considered the agreement, along with other evidence submitted, and agreed with Wilson that only a single room in the residence was rented, with access to common areas. Our analysis today applies to scenarios where a homeowner has rented a single room in the home and given the renter access to common areas, while maintaining possession of the house. Different facts/rental agreements may lead to different results.

redecorate the living room, bring her own furniture or furnishings, or cordon off spaces for her exclusive use.

Renting a room in a residence with access to the remainder of the house is not commonly understood as renting the entire house. If someone stated that they are renting or leasing a house, the common understanding is that they have possession and use of the entire premises, not just a single room. Conversely, an agreement to rent a room in a house does not translate to renting or leasing the total square footage of the house, even if the agreement allows access to common areas. A person who rents a single room does not have possession and use of the entire house. They have possession of the room, while only having use of the remainder of the house.

This concept is easily understood in the context of renting or leasing an apartment in a multi-unit dwelling. Just because a large apartment complex has a common pool, spa, and exercise room does not equate to the tenant "renting" or "leasing" these areas too. While a tenant may have *use* of these facilities, they do not have possession. Rather, the tenant rents/leases an apartment and has a license to use the common amenities. The renter does not, however, have any possessory interest in the facilities. This analysis is consistent with *Stanley*. It is also what is commonly understood when considering renting or leasing an apartment. When an apartment is listed for rental, the landlord generally describes the square footage of the unit. But this square footage *does not* include the square footage of the common areas over which the renter does not have possession. The same principles apply when determining the total square footage rented to a roommate in a house. Simply using the property and/or having access to it is not enough. Possession is a key element.

This analysis of renting or leasing is true even outside the context of real property. For example, if you rent or lease a vehicle, you have full use and possession over the vehicle for the term of the rental or leasing agreement. Likewise, if you rent sporting equipment, such as skis or bikes or kayaks, you are given use and possession over the equipment for the time of the rental.

We hold that Wilson only rented the square footage of the room within her residence, and not the common areas, which "is less than 50% of the total square footage of living space in that dwelling[.]" MCL 211.7dd(c). As such, Wilson is entitled to claim 100% of the PRE.

We recognize that this interpretation is at odds with the current Department of Treasury PRE Guidelines, which interpret this analogous scenario:

> **149. Chris owns Blue Acre. There is only one home on Blue Acre. Chris occupies the property as his principal residence. Non-owner, Donald, also resides at the property and pays Chris rent as a tenant. Is Chris eligible to claim a 100% principal residence exemption on Blue Acre?**
>
> No. A principal residence also includes any portion of a dwelling or unit of an owner that is rented or leased to another person as a residence as long as that portion of the dwelling or unit that is rented or leased is less than 50% of the total square footage of living space in that dwelling or unit. Chris may be eligible for a 100% principal residence exemption if Donald, the non-owner tenant, leased less than 50% of the total square footage of living space in Chris' dwelling. *It is*

*reasonable to assume the non-owner tenant occupied and leased 50% of the property since he or she would have equal use of the property*. Therefore, in most cases, an owner would only be eligible for a 50% principal residence exemption in these situations. MCL 211.7dd(c). [Michigan Department of Treasury, PRE Guidelines (August 2022), ¶ 149 (emphasis added).[3]]

These guidelines were amended in August 2022. Previously, the Treasury's relevant guideline provided the opposite advice:

**3. I rent a room in my home to a boarder. May I still claim an, exemption?**

Yes. If more than 50% of your home is used as your principal residence, you may claim an exemption for your entire home. If you use 50 percent or less of your home as a principal residence, enter the percentage of your home that you occupy on line number 12 of the Principal Residence Exemption (PRE) Affidavit, Form 2368.

**4. My mother lives in my home in a separate area, but does not pay rent. Is her living area part of my residence?**

If your mother's area has a separate entrance and does not have an adjoining entrance to your living area, then her living area is not part of your principal residence and is not eligible for this exemption. If there is a common entrance, question 3 applies. [Michigan Department of Treasury, PRE Guidelines (Revised February 2021), Chapter 5, Numbers 3 and 4.[4]]

This guideline was changed by the August 2022 revision. It is unclear what prompted the Treasury's change in the guideline, as there has been no intervening change in the relevant sections of the GPTA.

Regardless, "Michigan PRE guidelines do not have the force of a legal requirement." *Rentschler v Twp of Melrose*, 322 Mich App 113, 120; 910 NW2d 711 (2017). We do not find the amended guideline, ¶ 149, useful because it is contrary to the GPTA. The guideline disregards the common understanding of the terms "rent" and "lease," and what it means to rent or lease more than 50% of the square footage of a residence. It erroneously focuses on only the use of property,

---

[3] The current PRE Guidelines are available at Michigan.gov, Taxes, *What is a Principal Residence Exemption (PRE)?* <https://www.michigan.gov/taxes/-/media/Project/Websites/taxes/PRE-Documents/PRE-Guidelines--With-Table-of-Contents-and-Web-Links--August-30-2022.pdf?rev=c72f3b72d6474b07928a9d3923182f6e&hash=91862040D57DFDBEFD3ADAB760093736> (accessed January 26, 2023).

[4] See <https://www.michigan.gov/-/media/Project/Websites/taxes/MISC/2017/2017_2856_PRE_guidelines.pdf?rev=00a6aef327064b8c907fcfd4bceeefc4> (accessed January 26, 2023).

and does not consider the element of possession. As discussed previously, rent and lease both connote possession and use of the property; use alone is not enough.

## C. CONCLUSION

We conclude that the tribunal's analysis is erroneous and inconsistent with the GPTA. Renting a room in one's home to a roommate, with access to common areas, is not the equivalent of renting 50% or more of the square footage of the residence and does not disqualify a homeowner from the PRE. Accordingly, accepting the tribunal's factual findings, we conclude that Wilson has satisfied the legal requirements to qualify for the PRE. We therefore reverse the tribunal's decision and remand for entry of a judgment granting Wilson's request for a PRE for the 2019 and 2020 tax years.

/s/ Sima G. Patel
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro