*In re* FORFEITURE OF $5,264

Docket No. 82253. Argued December 8, 1988 (Calendar No. 7). Decided
    April 19, 1989.

Rex Lewandowski was convicted of delivering a controlled sub-
    stance over 50, but less than 225, grams. A separate civil action
    in rem was brought by the prosecutor in the Macomb Circuit
    Court, seeking forfeiture of certain money, the defendant's car,
    the building and business inventory of the defendant's store,
    where the alleged sale of the controlled substances took place,
    and the real property on which the building stood. The court,
    George R. Deneweth, J., ordered forfeiture, including the build-
    ing, holding overwhelming the evidence offered to support a
    finding that an actual sale took place there. The Court of
    Appeals, MAHER, P.J., and McDONALD and H. E. DEMING, JJ.,
    reversed in an unpublished opinion per curiam, holding that
    the real property was merely the situs of the violation and thus
    not subject to forfeiture (Docket No. 93247). The prosecutor
    appeals.

In an opinion by Chief Justice RILEY, joined by Justices
    BRICKLEY, BOYLE, ARCHER, and GRIFFIN, the Supreme Court
    *held:*

Real property allegedly used to facilitate a violation of the
    controlled substances act may be forfeited under § 7521(1)(f) of
    the act only if the party seeking forfeiture establishes a sub-
    stantial connection between the realty and the underlying
    illegal transaction.

1. The forfeiture provision of the controlled substances act,
    § 7521(1)(f), that any thing of value used to facilitate any
    violation of the act, including but not limited to money, nego-
    tiable instruments, or securities is subject to forfeiture, is on its
    face, ambiguous with respect to an intent to permit forfeiture
    of real property, and thus is susceptible to reasonable construc-
    tion. The phrase "any thing of value" is all-inclusive, encom-
    passing every object of property, real and personal. Nowhere in

REFERENCES

Am Jur 2d, Drugs, Narcotics, and Poisons §§ 27-27.28.
Necessity of conviction of offense associated with property seized in
    order to support forfeiture to state or local authorities. 38
    ALR4th 515.

§ 7521(1)(f) is real property excluded, and subsequent provisions of the act reveal that the Legislature contemplated the forfeiture of real property under § 7521(1)(f). In addition, the legislative history of § 7521(1)(f) supports the conclusion that forfeiture of real property was intended. Read as a whole, and in light of the legislative history of § 7521(1)(f), the act provides for forfeiture of real property as a thing of value when used to facilitate a violation of the act.

2. The controlled substances act is embodied in the Public Health Code, which expressly mandates liberal construction to promote the health, safety, and welfare of Michigan citizens. In drafting § 7521(1)(f), the Legislature recognized that forfeiture is a powerful deterrent to wholesale drug dealers. Not only does it eliminate much of the profit incentive from drug dealing, but it also provides needed resources for state and local drug enforcement authorities. In light of this policy, it must be concluded that the Legislature intended to allow forfeiture of real property under any of the three alternatives provided in § 7521(1)(f).

3. In determining the propriety of an order of forfeiture, courts must be guided by a rule of reasonableness. Under § 7521(1)(f), in order for real property allegedly used to facilitate a violation of the controlled substances act to be forfeited, the party seeking forfeiture must establish a substantial connection between the property and the underlying illegal transaction. In this case, sufficient evidence was presented to support a finding that the claimant's store was used to facilitate the unlawful sale of narcotics and that it was an integral part of a continuing drug operation, and thus substantially connected to his unlawful cocaine business.

Justice LEVIN, concurring, stated that the Legislature, in providing in § 7523(3) for a determination of the title to forfeited real property, intended that commercial real property is to be subject to forfeiture as a thing of value under § 7521(1)(f). Absent an indication to the contrary, a conclusion that such property is not subject to forfeiture is not justified.

Reversed.

Justice CAVANAGH, dissenting, stated that the principles of statutory construction and the legislative history of § 7521(1)(f) of the controlled substances act do not support the conclusion of the majority that the Legislature intended to provide for civil forfeiture of real property under the circumstances of this case. Rather, they support the decision of the Court of Appeals which should be affirmed.

While § 7521(1)(f) is ambiguous, a reading of the statute as a

whole and its history do not support the conclusion that the phrase "any thing of value" was intended to include real property as being subject to forfeiture when it is used to facilitate a violation of the act. A construction that recognizes that forfeiture of real property is permitted only if it was furnished in exchange for a controlled substance or was traceable to such an exchange renders the act consistent as a whole.

1. FORFEITURES AND PENALTIES — CONTROLLED SUBSTANCES ACT — REAL PROPERTY.

    Real property allegedly used to facilitate a violation of the controlled substances act may only be forfeited if the party seeking forfeiture establishes a substantial connection between the realty and the underlying illegal transactions (MCL 333.7521[1][f]; MSA 14.15[7521][1][f]).

2. FORFEITURES AND PENALTIES — CONTROLLED SUBSTANCES ACT — REAL PROPERTY — WORDS AND PHRASES.

    The phrase "any thing of value" as used in the forfeiture provision of the controlled substances act includes every object of property, real and personal, subjecting such property to forfeiture where it is used to facilitate a violation of the act and it is established that there is a substantial connection between the property and the underlying illegal transaction (MCL 333.7521[1][f]; MSA 14.15[7521][1][f]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Carl J. Marlinga,* Prosecuting Attorney, *Robert John Berlin,* Chief Appellate Lawyer, and *Edward L. Graham,* Assistant Prosecuting Attorney, for the plaintiff.

*O'Dea & Jamnik, P.C.* (by *P. Kelly O'Dea*), for the defendant.

RILEY, C.J. In this case, we are asked to decide whether a store building which was allegedly used to facilitate the sale of a controlled substance may be forfeited pursuant to MCL 333.7521(1)(f); MSA 14.15(7521)(1)(f). Drawing upon the plain language and legislative history of § 7521(1)(f) as well as the public policy of the controlled substances act, MCL 333.7101 *et seq.;* MSA 14.15(7101) *et seq.,* we hold that the Legislature intended to allow the forfei-

ture of real property under that provision. We conclude that, in the instant case, there was sufficient evidence to support the trial court's finding that the claimant's store was used to facilitate the unlawful sale of narcotics. Because the claimant's store was, in our view, "substantially connected" to his cocaine business, we reverse the decision of the Court of Appeals and reinstate the trial court's order of forfeiture.

## I. FACTS AND PROCEEDINGS

Claimant Rex Lewandowski owned and operated the Mother Lode, a precious metal and jewelry exchange store. Undercover officer Thomas Trombley entered the Mother Lode on August 8, 1985, accompanied by an informant who knew the claimant. Trombley indicated that he wanted to buy one-half ounce of cocaine. However, the claimant stated that he would not handle a transaction involving less than two ounces. The parties then agreed to a sale for that amount, and Trombley gave the claimant $2,500 as a down payment. Using the business phone, the claimant made several attempts to contact his supplier. When his efforts failed, the claimant returned the money to Trombley. The claimant instructed Trombley to contact him the next day to see if he had communicated with his source.

Trombley met the claimant at the Mother Lode the following morning. They went for a ride in claimant's new BMW automobile. During the drive, the claimant advised Trombley that he would not be able to reach his source until later that afternoon. At approximately 2:00 P.M., Trombley returned to the store and drove the claimant to a particular phone booth from which the supplier was contacted.

The claimant advised Trombley that he could obtain the cocaine for $4,000 and that immediate payment was necessary. The claimant offered Trombley a Mother Lode business receipt in return for the $4,000. However, Trombley refused to tender the cash up-front. Instead, the two agreed to meet later that evening at a shopping mall.

At the mall, the claimant told Trombley that the cocaine was under the front seat of the BMW. As instructed, the detective placed $4,000 in the glove compartment and retrieved a package containing cocaine.

On August 14, 1985, Trombley called the claimant at the Mother Lode. The claimant returned his call and arranged to deliver additional cocaine. When Trombley met the claimant at the store later that day, the claimant retrieved eight ounces of cocaine from the BMW and gave it to Trombley in a back room. In exchange, Trombley gave the claimant $15,000. The claimant placed the money in a desk drawer behind the front counter in the display room.

Shortly after the exchange took place, the claimant was arrested and charged with delivering over 50 grams but less than 225 grams of cocaine. MCL 333.7403(2)(a)(iii); MSA 14.15(7403)(2)(a)(iii). The claimant's business was searched. On August 15, 1985, the prosecutor, pursuant to MCL 333.7522; MSA 14.15(7522), filed the present civil forfeiture action in rem in Macomb Circuit Court, seeking the confiscation of $5,264 found in a drawer behind the store counter, the BMW automobile registered to the claimant, the building and business inventory of the Mother Lode, and the real property upon which the building stood. Only the building and the real property are at issue in this appeal. Deeds indicated that the claimant was the sole owner of the building and real estate.

On February 14, 1986, the claimant was convicted of the charged offense. A forfeiture hearing was held on May 22, 1986.[1] The trial court ordered the forfeiture of the claimant's building on May 23, 1985, stating that MCL 333.7521(1)(f); MSA 14.15(7521)(1)(f) clearly permits the forfeiture of "any thing of value [including real estate] which is used . . . for the purpose of facilitating [the sale of a controlled substance]." In the opinion of the trial court, the prosecutor presented an overwhelming amount of evidence to support the forfeiture of the claimant's store. "We have testimony, uncontradicted, [that] the actual buy took place in a back room of the Mother Lode, that's in the store itself . . . [and that] an offer was made to sell another . . . large quantity of cocaine as Detective Trombley was preparing to leave the store."

The Court of Appeals reversed the trial court's order of forfeiture.[2] Relying upon *In re Forfeiture of 2850 Ewing Road,* 161 Mich App 266; 409 NW2d 800 (1987), lv den 429 Mich 884 (1987), the Court held that "[r]eal property which is merely the situs of a violation of the controlled substances act is not subject to forfeiture."[3] On June 22, 1988, we

---

[1] At the hearing, Trombley and another undercover officer testified with regard to the events described above. Adrian Lewandowski, claimant's brother, testified for the defense. He claimed that the money found in the drawer behind the store counter was his. Adrian explained that he had acted as an agent for his brother's company by purchasing precious metals and jewelry. When the business was short on cash, Adrian would provide the needed liquidity. According to Adrian, the store did not have a separate cash drawer. Adrian claimed that the $5,264 was found in his own personal drawer and that he was, therefore, entitled to its return.

The trial court, finding Adrian to be an incredible witness, rejected his claim to the money and ordered the forfeiture of all of the above categories of property.

[2] *In re Forfeiture of $5,264,* unpublished opinion per curiam of the Court of Appeals, decided December 1, 1987 (Docket No. 93247).

[3] The Court of Appeals addressed each category of property separately. As to the $5,264, the Court held that only $400 was forfeitable

granted leave to appeal, limited to the issue whether the store building was subject to forfeiture under MCL 333.7521; MSA 14.15(7521).[4]

## II. STATUTORY CONSTRUCTION

The issue before the Court is one of statutory construction. Our primary goal in interpreting MCL 333.7521; MSA 14.15(7521) is to ascertain and give effect to the intent of the Legislature in enacting the statute. If the language of a statute is unambiguous, the intent must be determined accordingly, and no judicial interpretation is warranted. *City of Livonia v Dep't of Social Services,* 423 Mich 466, 487; 378 NW2d 402 (1985); *Dussia v Monroe Co Employees Retirement System,* 386 Mich 244, 249; 191 NW2d 307 (1971); *Melia v Employment Security Comm,* 346 Mich 544, 562; 78 NW2d 273 (1956). However, where statutory language is of doubtful meaning, a court must look to the object of the statute, the harm which it is designed to remedy, and apply a reasonable construction which best accomplishes the statute's purpose. *State Treasurer v Wilson,* 423 Mich 138, 144; 377 NW2d 703 (1985); *Lakehead Pipe Line Co v Dehn,* 340 Mich 25, 35; 64 NW2d 903 (1954).

MCL 333.7521; MSA 14.15(7521) provides:

(1) The following property is subject to forfeiture:

because only four marked $100 notes were specifically traceable to the sale of cocaine. Second, the Court found that there was little dispute about the forfeitability of the BMW since it had been involved in each of the cocaine transactions. Third, the Court held that the business inventory was forfeitable because claimant's cocaine business was tightly interwoven with the legitimate business. According to the Court, "[w]hile business records indicate that claimant was operating a gold and jewelry exchange, the people proved by a preponderance of the evidence that sales of the inventory were used to conceal controlled substance transactions."

[4] 430 Mich 891 (1988).

\* \* \*

(f) *Any thing of value* that is furnished or intended to be furnished in exchange for a controlled substance or an imitation controlled substance in violation of this article, traceable to an exchange for a controlled substance or an imitation controlled substance in violation of this article, or *used or intended to be used to facilitate any violation of this article including but not limited to money, negotiable instruments, or securities.* To the extent of the interest of an owner, a thing of value is not subject to forfeiture under this subdivision by reason of any act or omission that is established by the owner of the item to have been committed or omitted without the owner's knowledge or consent. Any money that is found in close proximity [sic] to any property that is subject to forfeiture under subdivision (a), (b), (c), (d), or (e) shall be presumed to be subject to forfeiture under this subdivision. This presumption may be rebutted by clear and convincing evidence. [Emphasis added.]

At issue is the proper construction of the phrase "any thing of value that is . . . used or intended to be used to facilitate any violation of this article including but not limited to money, negotiable instruments, or securities." Section 7521(1)(f) does not expressly specify real property as "any thing of value" used to facilitate a violation of the controlled substances act. Thus, because the statute is ambiguous on its face, we must determine and give effect to the intention of the Legislature.

### A

A thorough examination of the express language of § 7521(1)(f) evidences the Legislature's intent to permit the forfeiture of real property. When drafting the forfeiture provision, the Legislature used

the term "any" to describe "thing of value." Webster defines the adjective "any" to mean "every." *Webster's Ninth New Collegiate Dictionary* (1985), p 93. The term "thing" is defined as an "object[ ] . . . of property as contradistinguished from 'person.' " Black's Law Dictionary (5th ed), p 1326. In light of these common-sense definitions, real property would seem to qualify as "any thing of value."

In *Gibson v Agricultural Life Ins Co*, 282 Mich 282, 289; 276 NW 450 (1937), a case involving the interpretation of the word "any" in a contract of insurance, we affirmed the trial court's finding that "[t]he clause uses the word 'any,' which to the ordinary understanding implies 'of every kind.' The word negatives the idea of exclusion and would seem to mean just what it says. The plaintiff insists [incorrectly] the word 'any' as used in this contract means less than all." Like the plaintiff in *Gibson,* the claimant in the instant case contends that "any" in § 7521(1)(f) means less than "every" and that real property is somehow excluded from the phrase "any thing of value" used to facilitate a violation of the controlled substances act.

As in *Gibson,* we decline to adopt such an illogical construction. The phrase "any thing of value," in our view, is all-inclusive, encompassing both real and personal property. Nowhere does § 7521(1)(f) exclude real property from its coverage. In fact, an inspection of MCL 333.7523; MSA 14.15(7523) and MCL 333.7524; MSA 14.15(7524), the provisions immediately following § 7521 in the controlled substances act, reveals that the Legislature undoubtedly contemplated the forfeiture of real property under § 7521(1)(f). In § 7523(3), the Legislature expressly stated that a court of competent jurisdiction shall determine who has "[t]itle to real property forfeited under [the controlled sub-

stances act]."[5] Moreover, in § 7524(2), the Legislature articulated the various methods through which an appointed receiver may dispose of real property forfeited under article 7 of the act.[6] Because of the Legislature's express directives regarding real property in §§ 7523(3) and 7524(2), and in light of the well-known rule of statutory construction that each provision of an act is to be read with reference to every other provision so as to produce an harmonious whole, *Detroit v Detroit Police Officers Ass'n,* 408 Mich 410, 481; 294 NW2d 68 (1980); *Ram Broadcasting of Michigan, Inc v Public Service Comm,* 113 Mich App 79, 88; 317 NW2d 295 (1982); see 2A Sands, Sutherland Statutory Construction, § 46.05, p 90, we conclude that real property is subject to forfeiture under § 7521(1)(f). Unless the Legislature had contemplated the forfeiture of real property in some manner pursuant to § 7521(1)(f), both § 7523(3) and § 7524(2) would be superfluous.

---

[5] Section 7523(3) provides:

Title to *real property forfeited under this article* shall be determined by a court of competent jurisdiction. A forfeiture of real property encumbered by a bona fide security interest is subject to the interest of the secured party who neither had knowledge of nor consented to the act or omission. [Emphasis added.]

[6] Section 7524(2) provides:

In the course of selling real property pursuant to subsection (1)(b), the court that has entered an order of forfeiture may, on motion of the agency to whom the property has been forfeited, *appoint a receiver to dispose of the real property forfeited.* The receiver shall be entitled to reasonable compensation. The receiver shall have authority to do all of the following: ·
(a) List the forfeited real property for sale.
(b) Make whatever arrangements are necessary for the maintenance and preservation of the forfeited real property.
(c) Accept offers to purchase the forfeited real property.
(d) Execute instruments transferring title to the forfeited real property. [Emphasis added.]

The claimant, relying upon *Ewing Road*, contends that real property is subject to forfeiture under § 7521(1)(f) only when it is "*furnished* in exchange for a controlled substance" or "*traceable* to an exchange for a controlled substance*.*" In *Ewing Road*, the Court of Appeals refused to permit the forfeiture of a private residence from which the owner had engaged in the regular sale of marijuana. *Id.* at 268. The Court opined that a thing of value which is used to facilitate a violation of the controlled substances act does not include real property because of the proviso "including but not limited to money, negotiable instruments, or securities:"

> We conclude that the proviso . . . relates only to that portion of subsection (f) which provides that any thing of value is subject to forfeiture which is "used or intended to be used to facilitate any violation of this article." We so conclude because of the lack of a comma between the word "article" and the proviso. [*Id.* at 272.]

According to the Court, had the Legislature not intended to restrict the type of property subject to forfeiture, it would have simply ended the sentence after the word "article," rather than inserting a limiting proviso. Because real property is "radically different in kind" from the illustrative list provided by the Legislature,[7] the Court con-

---

[7] The Court of Appeals evidently applied the doctrine of ejusdem generis. The literal translation of the expression is "[o]f the same kind, class, or nature." Black's Law Dictionary (5th ed), p 464:

> In the construction of laws, wills, and other instruments, the "ejusdem generis rule" is, that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying. only to persons or things of the same general kind or class as those specifically mentioned. *The rule, however, does not necessarily*

cluded that the claimant's home may not be forfeited under subsection (f). *Id.* at 272.

We reject this strained construction of § 7521(1)(f).[8] In our view, the sentence at issue in this case should be read as a whole rather than in the disjointed manner urged by the Court in *Ewing Road* and the claimant in the instant case. The *Ewing Road* Court based its interpretation of § 7521(1)(f) on the lack of a comma. Relying so heavily upon the absence of a punctuation mark, in our view, exalts form over substance. Although the form and location of a proviso may be some indication of legislative intent, form alone will not control. No presumption regarding the scope of its application arises from the location of the proviso. *Kelley v Recorder's Court Judge*, 239 Mich 204, 212; 214 NW 316 (1927); *E F MacDonald Co v Dep't of Treasury*, 62 Mich App 626, 632; 233 NW2d 678 (1975); see 2A Sands, Sutherland Statutory Construction, § 47.09, p 138.

In our view, the proviso was placed in

require that the general provision be limited in its scope to the identical things specifically named. Nor does it apply when the context manifests a contrary intention. [Citations omitted.]

In our view, the rule of ejusdem generis does not apply in the instant case. We find no evidence suggesting that items forfeited under § 7521(1)(f) must be identical or even comparable to "money, negotiable instruments, or securities." In fact, we can only find evidence suggesting that things forfeited under the statute need not be similar to "money, negotiable instruments, or securities." First, the statute begins with the phrase "*any* thing of value" which, to us, implies an intention to be as expansive as possible. Second, in the proviso itself, the Legislature employed the words "*including but not limited to* money, negotiable instruments, or securities," which, in our opinion, further suggests that a broad construction was intended. Third, upon the basis of the express language of §§ 7523(3) and 7524(2), it is quite clear that the Legislature intended to permit the forfeiture of real property under § 7521(1)(f). Accordingly, we conclude that the doctrine of ejusdem generis should not be applied in this case.

[8] A recent panel of the Court of Appeals has also rejected this interpretation of § 7521(1)(f). *In re Forfeiture of 45649 Maben Road*, 173 Mich App 764; 434 NW2d 238 (1988).

§ 7521(1)(f) to modify "any *thing* of value." The claimant contends that the proviso only precludes the forfeiture of real property under the last clause of the statute which permits the forfeiture of any thing of value "used to facilitate" a violation of the controlled substances act. Thus, according to the claimant, because real property which is "furnished for" or "traceable to" a controlled substance may still be forfeited under § 7521(1)(f), §§ 7523(3) and 7524(2) are not rendered nugatory.

We find no evidence that the Legislature intended to change its intent in midsentence. On the contrary, we can only find evidence suggesting that the proviso was intended to apply to all three clauses. According to fundamental rules of grammar, a present participial phrase, like "including, but not limited to money, negotiable instruments, or securities,"[9] is used as an adjective and, therefore, must modify a noun.[10] The only noun used as a subject in § 7521(1)(f) is "thing." Hence, in our view, the proviso modifies "any thing of value" that is *furnished* for a controlled substance, *traceable* to a controlled substance, or *used to facilitate* a violation of the act.

---

[9] Shaw, *Errors in English and Ways to Correct Them* (New York: Harper & Row, 3d ed, 1986), pp 227-229:

> A *participle* is a verbal adjective, a word having the function of both verb and adjective. As a verb form, it can take an object and be affected in meaning by an adverb. *As an adjective, it can modify a noun or pronoun and can itself be modified by an adverb.* [*Id.*, p 227. Emphasis added.]

A participle may be in the present (singing, asking), past (sung, asked) or perfect (having sung or having been sung, having asked or having been asked) tense. *Id.* A *participial phrase* takes its name from the initial word in the phrase. *Id.*, p 229.

From these basic rules of grammar, we infer that the proviso "including but not limited to" is a present participial phrase derived from the verb "include." The phrase as used in the first sentence of § 7521(1)(f) is an adjective modifying the noun "thing."

[10] Shaw, *Errors In English*, n 9 *supra*, p 227. "An *adjective* modifies (affects the meaning of) a noun or pronoun."

Contrary to the interpretation of the Court of Appeals in *Ewing Road,* we do not view the proviso, "including but not limited to," to be one of limitation. Rather, we believe the phrase connotes an illustrative listing, one purposefully capable of enlargement. *Skillman v Abruzzo,* 352 Mich 29, 33-34; 88 NW2d 420 (1958); *People v Clark-Van Brunt,* 158 Cal App 3d Supp 8; 205 Cal Rep 144, 149 (1984); *Lenoir City v State ex rel City of Loudon,* 571 SW2d 297, 299 (Tenn, 1978). Furthermore, in light of the Legislature's express directives in §§ 7523(3) and 7524(2), we are persuaded that the forfeiture of real property was envisioned in the statutory scheme and intended to be included in the phrase "any thing of value."[11]

## B

Our examination of the legislative history of § 7521 also indicates the Legislature's intent to permit the forfeiture of real property when it has been used to facilitate a violation of the controlled substances act.

Before amending § 7521(1)(f) in 1982, the Legislature recognized an apparent obstacle in the state's war on drugs:

> Four years ago, the U. S. Congress amended the federal Uniform Controlled Substances Act to permit the civil forfeiture of property of virtually any

---

[11] As stated previously, § 7524(2) specifically addresses the sale of real property "pursuant to subsection (1)(b)." Subsection (1)(b) then refers back to § 7521(1)(f) as follows: "The proceeds and any money, negotiable instruments, securities, or *any other thing of value* as described in section 7521(1)(f) that are forfeited pursuant to this article shall be applied . . . ." (Emphasis added.) Although real property is not expressly included in subsection (1)(b), we conclude, upon the basis of an harmonious reading of §§ 7521(1)(f), 7523(3), and 7524(2), that the Legislature intended to include real property in the term "any thing of value."

kind, including money, when the property could be
directly linked to illegal drug transactions. As a
result of that amendment, federal agents in fiscal
year 1980-1981 were responsible for the forfeiture
of over five million dollars in assets from Michigan
drug busts in which local law enforcement agen-
cies often played a major role. These assets benefit-
ted the federal treasury, but had Michigan's laws
contained similar forfeiture provisions those funds
could have been retained by state and local law
enforcement agencies for use in the state in the
fight against drug trafficking. However, state offi-
cials have no authority under current state law to
forfeit assets related to drug violations using the
civil law's lower standard of proof. The federal
Drug Enforcement Administration has made avail-
able a model law for states to use in making their
laws parallel to the federal act. . . . [T]he legisla-
ture ought to act to adopt some form of that model
law so that law enforcement agencies and sub-
stance abuse programs in the state could make use
of forfeited assets that otherwise would go to the
federal government. [House Legislative Analysis,
SB 645, September 21, 1982.]

Addressing this loophole in state law, the Legis-
lature drafted the current version of § 7521(1)(f).
The statute was purposefully patterned after the
federal forfeiture act, 21 USC 881(a)(6), which
provides in part that "[a]ll moneys, negotiable
instruments, securities, or other things of value"
may be subject to forfeiture.[12] Our Legislature
chose to reverse the listing of the property subject

---

[12] 21 USC 881(a)(6) specifically provides:

(a) The following shall be subject to forfeiture to the United
States and no property right shall exist in them:

* * *

(6) All moneys, negotiable *instruments, securities, or other
things of value* furnished or intended to be furnished by any
person in exchange for a controlled substance in violation of
this subchapter, all proceeds traceable to such an exchange,
and all moneys, negotiable instruments, and securities used or

to forfeiture to read "any thing of value . . . including, but not limited to money, negotiable instruments, or securities." In our view, the Legislature made this language change in order to provide a more expansive definition of the phrase, "any thing of value."

Federal courts have permitted the forfeiture of real property under § 881(a)(6). See, e.g., *United States v Premises Known As 8584 Old Brownsville Rd, Shelby Co, Tennessee,* 736 F2d 1129 (CA 6, 1984); *United States v Certain Real Property Situated at Route 3, Box 247E, Mountain Home, Arkansas,* 568 F Supp 434 (WD Ark, 1983). Thus, since our Legislature's stated purpose in amending § 7521(1)(f) was to parallel the federal act, it becomes clear that the Michigan statute should also be construed to include the forfeiture of real property which is used to facilitate a violation of the controlled substances act. If we decline to adopt such a construction of § 7521(1)(f), the practical effect would be to allow the federal government to acquire real property in Michigan which is unavailable to our own state and local drug enforcement authorities. Such a result contravenes the legislative intent, especially if federal and state agencies had worked jointly to uncover a particular drug operation. Not only would such a result prejudice local agencies involved in joint investigations, but it might also set up barriers to coöperation between drug enforcement agencies. Dep't of Public Health, House Legislative Analysis, SB 645, September 21, 1982.

intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

In view of the legislative history of § 7521(1)(f), we are persuaded that the Legislature intended to permit the forfeiture of real estate which is used to facilitate violations of the controlled substances act.[13]

C

The claimant asserts that because the law does not favor forfeitures, § 7521(1)(f) must be strictly construed. *Goetz v Black,* 256 Mich 564; 240 NW 94 (1932); *In re Forfeiture of 8120 Ravine Rd, Alamo Twp,* 151 Mich App 358; 390 NW2d 242 (1986); *United States v One 1936 Model Ford,* 307 US 219; 59 S Ct 861; 83 L Ed 1249 (1939); *United States v One 1976 Buick Skylark,* 453 F Supp 639 (DC Colo, 1978). Thus, in the claimant's view, because real property is not expressly provided for in the forfeiture statute, his store should not be subject to forfeiture.

We reject this argument for two reasons. First, while we recognize the settled principle that forfeitures are not favored in the law, we must also attach some significance to the Legislature's express mandate in MCL 333.1111(2); MSA 14.15(1111)(2) to liberally construe the Public Health Code "for the protection of the health, safety, and welfare of the people of this state." The controlled substances act is embodied in article 7 of the Public Health Code. Section 7101(2) of that

---

[13] The dissent asserts that the pending amendment to the forfeiture statute, see SB 244 and HB 4277, "illustrates the apparent belief of our Legislature that real property is not currently forfeitable if it is merely used to facilitate a violation of the controlled substances act." *Post,* p 274. We disagree. In our view, the fact that the 85th Legislature is considering such an amendment merely supports our conclusion that the present language of § 7521(1)(f) is ambiguous, thereby warranting reasonable judicial interpretation. The fact that the Legislature has chosen to clear up this ambiguity in a manner consistent with the majority opinion lends further support for the reasonable construction we have adopted today.

article expressly provides that the "definitions and *principles of construction [in article 1 are] applicable to all articles in this code."* MCL 333.7101(2); MSA 14.15(7101)(2) (emphasis added). Thus, by virtue of the Legislature's express commands in §§ 1111(2) and 7101(2), we must liberally interpret § 7521(1)(f) in order to promote the health, safety, and welfare of Michigan citizens.

Second, if we strictly construe § 7521(1)(f) so as to preclude the forfeiture of real property which is "used to facilitate" a violation of the controlled substances act, we must also preclude the forfeiture of any realty that is "furnished for" or "traceable to" a controlled substance. Were we to adopt such an interpretation, not only would we be ignoring the legislative directives in § 7523(3) and § 7524(2), but we would also be disregarding the methods the Legislature has established for protecting the health, safety, and welfare of the citizens of this state who are endangered by widespread drug trade.

The Legislature, in drafting § 7521(1)(f), recognized that forfeiture is a powerful deterrent to wholesale drug dealers. Not only does forfeiture eliminate much of the profit incentive from drug dealing, but it also provides needed resources for state and local drug enforcement authorities currently waging a war on drugs. In light of this policy, we believe that the Legislature intended to allow the forfeiture of real property under any of the three alternatives in § 7521(1)(f).

### III. APPLICATION TO THE MOTHER LODE

In the instant case, the trial court ordered the forfeiture of the claimant's store, finding that the prosecutor had established by a preponderance of the evidence that the Mother Lode had been used

to facilitate the unlawful sale of drugs. Findings of a trial court sitting without a jury will not be set aside on appeal unless they are determined to be clearly erroneous. *Smith v State Accident Fund,* 403 Mich 201, 204; 267 NW2d 909 (1978); *Tuttle v Dep't of State Hwys,* 397 Mich 44, 46; 243 NW2d 244 (1976). " '[A] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Smith, supra* at 204 (citations omitted). In light of this standard of review, we turn to the order of forfeiture issued by the trial court in the instant case.

In determining the propriety of an order of forfeiture, courts must be guided by a rule of reasonableness. For example, we agree with the Legislature that it would be unfair to order the forfeiture of a home or business if the owner had been unaware that a member of the household or business was trafficking controlled substances. In response to this concern, the Legislature, in § 7521(1)(f), expressly prohibited the confiscation of an unwitting owner's property:

> To the extent of the interest of an owner, a thing of value is not subject to forfeiture under this subdivision by reason of any act or omission that is established by the owner of the item to have been committed or omitted *without the owner's knowledge or consent.* [Emphasis added.][14]

It is equally unreasonable, in our view, for a court to order the forfeiture of property which has

---

[14] Similarly, in § 7523(3), the Legislature specifically protects an unsuspecting party having a security interest in realty forfeited under § 7521(1)(f): "A forfeiture of real property encumbered by a bona fide security interest is subject to the interest of the secured party who *neither had knowledge of nor consented to the act or omission.*" (Emphasis added.)

only an incidental or fortuitous connection to the unlawful activity. We have yet to determine what sort of relationship will satisfy the "facilitation" language of § 7521(1)(f). However, in interpreting similar language in 21 USC 881, the federal courts have held that in order for property to be forfeited under the "used to facilitate" language, there must be a "substantial connection" between the property and the underlying criminal activity.[15] Other federal circuits have expressly rejected any requirement of a substantial connection, holding instead that use of property "in any manner" in connection with an unlawful drug transaction is sufficient to justify forfeiture.[16]

---

[15] Cases interpreting 21 USC 881(a)(4) as requiring a "substantial connection": *United States v One 1966 Beechcraft Aircraft Model King Air A90*, 777 F2d 947, 953 (CA 4, 1985); *United States v One 1976 Ford F-150 Pick-Up*, 769 F2d 525, 527 (CA 8, 1985); *United States v One 1979 Porsche Coupe*, 709 F2d 1424, 1426 (CA 11, 1983); *United States v One 1972 Chevrolet Corvette*, 625 F2d 1026, 1029 (CA 1, 1980). Section 881(a)(4) permits the forfeiture of "[a]ll conveyances, including aircraft, vehicles, or vessels, which are *used, or are intended for use, to transport, or in any manner to facilitate* the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) or (2) . . . ."

Cases interpreting 21 USC 881(a)(6) as requiring a "substantial connection": *United States v Three Thousand Five Hundred Fifty Dollars*, 684 F Supp 1026 (ED Mo, 1988); *United States v Premises Known As 8584 Old Brownsville Rd, Shelby Co, Tennessee, supra* at 1131; *United States v Certain Real Property Situated At Route 3, Box 247E, Mountain Home, Ark, supra* at 436. Section 881(a)(6) provides for the forfeiture of "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance . . ., all proceeds traceable to such an exchange, and all moneys . . . *used or intended to be used to facilitate* any violation of this title . . . ."

Cases interpreting 21 USC 881(a)(7) as requiring a "substantial connection": *United States v 26.075 Acres Located in Swift Creek Twp, Wake Co, North Carolina*, 687 F Supp 1005, 1016-1017 (ED NC, 1988); *United States v Twelve Thousand Five Hundred Eighty-Five Dollars*, 669 F Supp 939, 943 (D Minn, 1987); *United States v Certain Lots in Virginia Beach, Virginia*, 657 F Supp 1062, 1064 (ED Va, 1987). Section 881(a)(7) permits the forfeiture of "[a]ll real property . . . which is *used, or intended to be used, in any manner or part, to commit, or to facilitate* the commission of, a violation of this title . . . ."

[16] *United States v 1964 Beechcraft Baron Aircraft*, 691 F2d 725, 728

Having examined the split of authority in the federal courts, we are persuaded by the faction adhering to the "substantial connection" test. We explicitly reject the "in any manner" test for Michigan.

The "substantial connection" test, in our view, strikes the proper balance between the rights of the individual property owners and the state's need to use the weapon of forfeiture in its war on wholesale drug dealing. For these reasons, we hold that real property which has allegedly been used to facilitate a violation of the controlled substances act may only be forfeited if the party seeking forfeiture establishes that there was a "substantial connection" between the realty and the underlying illegal transaction.

Having reviewed the record in the instant case, we hold that there was sufficient evidence to support a finding that the claimant's store was used to facilitate the unlawful sale of narcotics. In *United States v Certain Lots in Virginia Beach, Virginia,* 657 F Supp 1062 (ED Va, 1987), the court, applying the "substantial connection" test, refused to permit the forfeiture of the claimant's home upon the basis of one drug transaction. Despite the presence of drug-related items at the time of arrest, there was no evidence that the claimant routinely used the house to store, hide, or distribute drugs. Thus, according to the court, the brief use of the claimant's house was merely incidental to the transaction.

Similarly, in *United States v Twelve Thousand Five Hundred Eighty-Five Dollars,* 669 F Supp 939 (D Minn, 1987), another court declined to allow the

(CA 5, 1982) (interpreting § 881[a][4]); *United States v One 1974 Cadillac Eldorado Sedan,* 548 F2d 421, 427 (CA 2, 1977) (interpreting § 881[a][4]); *United States v Property Identified As 3120 Banneker Drive, NE, Washington, DC,* 691 F Supp 497, 500 (D DC, 1988) (interpreting § 881[a][7]).

forfeiture of a home which was the site of a single cocaine transaction. The claimant in *Twelve Thousand Dollars* had not used his home or telephone for any other drug sales, although he admitted to personal drug use. Furthermore, there was no evidence whatsoever suggesting that the claimant had used his home to store or distribute narcotics. Accordingly, the court concluded that there was no substantial connection between the claimant's residence and his drug activities.

In *United States v 26.075 Acres Located in Swift Creek Twp, Wake Co, North Carolina,* 687 F Supp 1005 (ED NC, 1988), the court upheld the forfeiture of a personal residence and a wooded tract of vacant land, finding that there was a substantial connection between the property and certain unlawful cocaine transactions. In reaching this result, the court noted that "utilizing or intending to utilize one's real property as the site for a drug transaction or intended drug transaction will render it subject to forfeiture." *Id.* at 1016. The court highlighted the fact that the claimant had, on two separate occasions, indicated to an undercover officer a willingness to secure the intended cocaine transaction by offering her deed to the farm as collateral. In the opinion of the *Swift Creek* court, this fact "result[ed] as a matter of law in the use or intended use of all of claimant's property described therein to facilitate a violation of Title 21, United States Code." *Id.* at 1017.

In the instant case, it is uncontroverted that the informant and Detective Trombley initially contacted the claimant at the Mother Lode for the specific purpose of buying cocaine and that each contact thereafter was in some way connected to the store. Unlike the isolated transactions involved in *Certain Lots In Virginia Beach* and *Twelve Thousand Dollars,* the instant case involves two

separate drug trades, each originating out of the Mother Lode. The undercover officer was encouraged to call and visit the claimant at his business in order to keep abreast of the status of their deals. Furthermore, unlike the claimant in *Twelve Thousand Dollars,* the claimant here repeatedly used the business phone to contact his supplier and to arrange meetings with his prospective buyer, Officer Trombley.

It is also uncontroverted that claimant Lewandowski, during the first cocaine transaction, offered the detective a Mother Lode receipt in exchange for cash up-front. In our view, this action is analogous to that of the claimant in *Swift Creek* who offered an undercover officer a deed to her farm as collateral in a drug deal. In light of Lewandowski's willingness to furnish Trombley with a Mother Lode receipt, it becomes clear that the claimant's business was an integral part of a continuing drug operation.

Further support for this conclusion can be found in the fact that the second transaction, involving eight ounces of cocaine and $15,000, actually took place in the back room of the store. At the conclusion of this particular trade, the claimant was seen commingling the proceeds with "legitimate" business funds in the cash drawer behind the front counter.

In light of the uncontroverted evidence in this case, we conclude that the claimant's store was "substantially connected" to his unlawful cocaine business.

### IV. CONCLUSION

In view of the express language and legislative history of the civil forfeiture statute, MCL 333.7521(1)(f); MSA 14.15(7521)(1)(f), and in consid-

eration of the policies underlying the controlled substances act, we hold that the Legislature intended to permit the forfeiture of real property under that provision. In balancing the rights of individual property owners with the state's need to utilize the weapon of forfeiture in its war on wholesale drug dealing, we hold that real property which has allegedly been used to facilitate a violation of the controlled substances act may only be forfeited if the party seeking forfeiture establishes that there was a "substantial connection" between the realty and the underlying illegal transaction.

Having reviewed the record in this case, we conclude that the claimant's jewelry store was substantially connected to his ongoing cocaine business. Thus, because there was ample evidence to support the trial court's finding that the claimant's store was used to facilitate the unlawful sale of narcotics, we reverse the decision of the Court of Appeals and reinstate the trial court's order of forfeiture.

BRICKLEY, BOYLE, ARCHER, and GRIFFIN, JJ., concurred with RILEY, C.J.

LEVIN, J. (*concurring*). Subsection (f) of § 7521(1) of the Public Health Code, providing that "[a]ny thing of value"[1] may be subject to forfeiture, and subsection (3) of § 7523, providing for a determina-

---

[1]    (1) The following property is subject to forfeiture:

* * *

(f) Any thing of value that is furnished or intended to be furnished in exchange for a controlled substance . . . in violation of this article, traceable to an exchange for a controlled substance . . . in violation of this article, or used or intended to be used to facilitate any violation of this article including but not limited to money, negotiable instruments, or securities. To the extent of the interest of an owner, a thing of value is not subject to forfeiture under this subdivision by reason of any act or omission that is established by the owner of the item to have been committed or omitted without the owner's knowledge or

tion of the "[t]itle to real property forfeited under this article,"[2] were both added by 1982 PA 251.

It thus appears that the Legislature, in providing for a determination of the title to forfeited real property, intended that commercial real property would be subject to forfeiture as a thing of value within the meaning of § 7521(1)(f).

Absent some indication that the Legislature did not so intend,[3] we would not be justified in concluding that the Legislature did not intend that commercial real property would be subject to forfeiture.

CAVANAGH, J. (*dissenting*). The narrow issue presented in this case is whether the Legislature intended to authorize the forfeiture of real property allegedly used to facilitate the sale of controlled substances. I agree with the majority that the language of MCL 333.7521(1)(f); MSA 14.15(7521)(1)(f) is ambiguous and, therefore, requires judicial interpretation. I cannot agree, how-

consent. Any money that is found in close proximity [sic] to any property that is subject to forfeiture under subdivision (a), (b), (c), (d), or (e) shall be presumed to be subject to forfeiture under this subdivision. This presumption may be rebutted by clear and convincing evidence. [MCL 333.7521(1)(f); MSA 14.15(7521)(1)(f).]

[2] Title to real property forfeited under this article shall be determined by a court of competent jurisdiction. A forfeiture of real property encumbered by a bona fide security interest is subject to the interest of the secured party who neither had knowledge of nor consented to the act or omission. [MCL 333.7523(3); MSA 14.15(7523)(3).]

The federal legislation referred to in the majority (*ante*, p 256) and the dissenting (*post*, pp 271–272) opinions on which the 1982 amendment, set forth in n 1, was apparently modeled did not provide specifically regarding the disposition of forfeited real property.

[3] I agree with the majority that real property is a "thing of value" within the meaning of all three clauses of the first sentence of § 7521(1)(f), and that the contrary contentions of the claimant in that regard are not persuasive.

ever, that principles of statutory construction and the legislative history of this provision support the majority's conclusion that the Legislature intended to provide for the civil forfeiture of real property under these circumstances. These principles and legislative materials support the decision of the Court of Appeals, which I would affirm.

When interpreting the language of a statute, the primary goal of this Court is to ascertain and give effect to the intention of the Legislature. *State Treasurer v Wilson,* 423 Mich 138, 143-144; 377 NW2d 703 (1985). Individual provisions must not be examined in isolation, but must be read in the context of the entire act, and words and phrases must be interpreted so as to be consistent with the entire statute, construed in the light of its history. *Arrowhead Development Co v Livingston Co Road Comm,* 413 Mich 505, 516; 322 NW2d 702 (1982).

The majority has concluded that because § 7521(1)(f) does not specify whether real property is subject to the terms of this forfeiture provision, the provision is ambiguous. I agree. I do not agree, however, with the majority's conclusion that a reading of the statute as a whole and its history support the conclusion that the Legislature intended to include real property as "any thing of value" subject to forfeiture when it is "used to facilitate" a violation of the controlled substances act.[1]

Subsection (f) of § 7521 provides for the forfeiture of property in three distinct categories:

> Any thing of value that is furnished or intended to be furnished in exchange for a controlled substance or an imitation controlled substance in violation of this article, traceable to an exchange for a controlled substance or an imitation con-

---

[1] MCL 333.7101 *et seq.*; MSA 14.15(7101) *et seq.*

trolled substance in violation of this article, or used or intended to be used to facilitate any violation of this article including but not limited to money, negotiable instruments, or securities.

The majority concludes, by reference to a dictionary and to common sense, that real property is encompassed within the phrase "any thing of value." No one suggests otherwise. The mere fact that real property is a thing of value does not, however, answer the precise question presented here. It is important to recognize that the claimant does not contend that real property can never be subject to forfeiture under § 7521(1)(f). He argues, instead, that although real property that is furnished in exchange for a controlled substance or traceable to an exchange for a controlled substance may be subject to forfeiture, real property is not subject to forfeiture if it is merely used to facilitate a violation of the act. The language and grammatical structure of § 7521(1)(f) as well as the act when read as a whole support this construction of the provision.

The Court of Appeals adopted this construction of the provision and, in reliance on the previous decision of the Court of Appeals in *In re Forfeiture of 2850 Ewing Rd,* 161 Mich App 266, 273; 409 NW2d 800 (1987), lv den 429 Mich 884 (1987), reversed the trial court's forfeiture of the claimant's real property. The Court in *Ewing Rd* held that real property is subject to forfeiture under the first two alternatives in § 7521(1)(f), but concluded that "the Legislature did not express an intent in subsection (f) that real property which is merely the situs of a violation of the controlled substances act be subject to forfeiture." The Court explained:

We conclude that the proviso including but not

limited to money, negotiable instruments, or securities relates only to that portion of subsection (f) which provides that any thing of value is subject to forfeiture which is "used or intended to be used to facilitate any violation of this article." We so conclude because of the lack of a comma between the word "article" and the proviso.

\* \* \*

We believe that had the Legislature not desired to limit the type of property subject to forfeiture, it would have inserted no limiting words whatsoever. Instead, the Legislature would have simply placed a period after the word article. If it had done so, any thing that was used to facilitate a drug transaction could have been seized. Instead, the Legislature chose to add an illustrative list. That list includes money, negotiable instruments, and securities. Clearly, the Legislature did not intend to specifically limit the type of property to those specific items. On the other hand, the items in the illustrative list are all items of property radically different in kind from real property. Nothing in this statute indicates a legislative intent that the situs of a drug transaction is subject to forfeiture merely because it is the situs. Had the Legislature intended a house to be subject to forfeiture if an illegal drug transaction occurs within the house, it could have clearly stated so. In other sections of the statute, the Legislature specifically provided that an aircraft, a vehicle, or a vessel was subject to forfeiture. It provided that books, records, research products, microfilm, tapes, and data are subject to forfeiture. It provided that containers for controlled substances were subject to forfeiture. However, nowhere in the statute does the Legislature indicate its intent that real property is subject to forfeiture merely because it is the situs of a drug transaction. [161 Mich App 272-273.]

The majority rejects this construction of subsection (f) as "strained" and "disjointed" and suggests

that to rely so heavily on the absence of a comma "exalts form over substance." However, the majority then proceeds to apply fundamental rules of grammar in an attempt to show that the proviso "including, but not limited to money, negotiable instruments, or securities," modifies "any thing of value" and was, therefore, intended to apply to all three classifications of property subject to forfeiture.

I agree that it would be inappropriate to give effect to a technical reading of a statute that is clearly at odds with the express intention of the Legislature. That is not the situation in this case, however. Here, the majority has disregarded both the structure and the history of the provision.

Although it is not determinative, it is significant that the Legislature chose not to punctuate the provision so as to make the limiting proviso applicable to the three clauses in the subsection that identify classifications of property subject to forfeiture. All three of these clauses modify the phrase "any thing of value." Identifying the proviso as a present participial phrase, as does the majority, does not make it pertain to all three clauses that modify "any thing of value." Although the majority may disagree that the Legislature intended to restrict the forfeiture of real property to the first two classifications identified in the subsection, the fact remains that, as drafted, the proviso modifies only the last classification of property.

Most importantly, the legislative history of the provision does not support the conclusion of the majority that the Legislature intended to permit the forfeiture of real property used to facilitate a violation of the act. There is no question that the Legislature adopted the forfeiture provision as a deterrent to the widespread illegal drug trade. The choice of ways to wage the so-called "war on

drugs," however, is not a choice for this Court to make. That choice is for the Legislature, and the task of this Court is not to determine whether, as a matter of policy, the civil forfeiture of real property would be an effective deterrent, but whether that was the choice made by the Legislature when this provision was adopted. In view of the legislative history of this provision and recent legislative activity to amend the statute to expressly provide for the civil forfeiture of real property under the "used to facilitate" alternative, I cannot agree that the Legislature intended to authorize such forfeitures at the time the provision was adopted.

As the majority indicates, the Michigan forfeiture statute, which was passed in 1982, was patterned after the federal forfeiture act, 21 USC 881(a)(6). It is clear, however, that the federal act did not expressly authorize the forfeiture of real property until it was amended in 1984 to add subsection (a)(7), which permits the forfeiture of "real property . . . which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title . . . ." PL 98-473, § 306(a), 98 Stat 2050. Although some federal courts have permitted the forfeiture of real property under § 881(a)(6),[2] legislative documents reveal that, even in 1984, Congress operated under the assumption that real

---

[2] The majority states that federal courts have permitted the forfeiture of real property under § 881(a)(6). Two federal cases are cited as supportive authority. Both the Sixth Circuit Court of Appeals in *United States v Premises Known As 8584 Old Brownsville Rd, Shelby Co, Tennessee,* 736 F2d 1129 (CA 6, 1984), and the United States District Court in *United States v Certain Real Property Situated at Route 3, Box 247E, Mountain Home, Arkansas,* 568 F Supp 434 (WD Ark, 1983), held that real property was subject to forfeiture as "proceeds" traceable to an illegal exchange of controlled substances. Unlike the majority of the Court in the present case, however, neither federal court sanctioned the forfeiture of real property merely "used to facilitate" drug dealing activities.

property was not subject to broad civil forfeiture. The Senate report of the Committee on the Judiciary regarding the Comprehensive Crime Control Act of 1983 acknowledges that real property which constitutes or is traceable to the proceeds of an illegal drug transaction is civilly forfeitable under 21 USC 881(a)(6), but also states:

> Under current law, if a person uses a boat or car to transport narcotics or uses equipment to manufacture dangerous drugs, his use of the property renders it subject to civil forfeiture. But if he uses a secluded barn to store tons of marihuana or uses his house as a manufacturing laboratory for amphetamines, *there is no provision to subject his real property to civil forfeiture,* even though its use was indispensable to the commission of a major drug offense and the prospect of the forfeiture of the property would have been a powerful deterrent. [S Rep No 225, 98th Cong (2nd Sess), 1984 US Code Cong & Admin News, p 3378. Emphasis supplied.]

It cannot be persuasively argued, then, that because the Michigan statute was patterned after the federal act, it should be construed to authorize the forfeiture of real property which is the situs of a drug transaction. Congress has amended the federal act, but the Michigan statute remains unchanged. Members of the Michigan Legislature have, however, attempted to amend the provision to provide the authorization that is presently lacking in the "used to facilitate" forfeiture alternative.

The 84th Legislature considered SB 648, which would have amended § 7521(1)(f) so as to provide for the forfeiture of anything of value used to facilitate a violation of the act "including but not limited to money, negotiable instruments, securities, or real estate." Although the bill passed the

Senate, it remained pending in the House Committee on the Judiciary at the end of the legislative session. An analysis prepared for SB 648 summarizes the argument in support of its passage as follows:

> The Public Health Code already includes provisions for the forfeiture of personal property used to facilitate the commission of a drug offense, but does not include the forfeiture of real property. Houses and other types of real property often are used in the commission of drug offenses, and such use reportedly is on the rise due to the increased prevalence of "crack houses" out of which operations for the sale and delivery of crack cocaine are run. The bill would serve as a deterrent to such use of real property by subjecting the proceeds of drug crimes to forfeiture and by using the forfeited property to enhance funding of drug crime reduction efforts. [Senate Legislative Analysis, SB 648, March 16, 1988.]

On March 9, 1989, SB 244 was introduced in the 85th Legislature. This proposed legislation does not alter subsection (1)(f), but instead adds subsection (h) to provide for the forfeiture of:

> Real property, including any right, title, or interest in the whole of any lot or tract of land and any appurtenances or improvements, that is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this article punishable by imprisonment for more than 1 year. However, real property shall not be forfeited under this subdivision to the extent of the interest of an owner of the real property, by reason of an act or omission that is shown by the owner to have occurred without that owner's knowledge or consent.

This legislation also provides in subsection (2)

for the protection of the interests of secured parties and prohibits forfeiture in subsection (3) if the owner of the real property "knows or has reasonable cause to believe that a violation of this article has taken place" and notifies a law enforcement agency in writing and also serves a notice to quit upon the individual violating the act. This legislation is currently pending in the Senate Committee on Criminal Justice and Urban Affairs.

The Legislature is also considering HB 4277, currently pending in the House Committee on Judiciary, which would amend the Public Health Code to add § 7526, in order to provide for the forfeiture of "all real property that is the proceeds of a crime or the substituted proceeds of a crime." This proposed legislation outlines a specific procedure to be followed, including a provision mandating notice and a hearing when a lien notice is filed against real property. In addition, the bill prohibits in § 7526(2) the forfeiture of real property if the owner of the property did not know of, or consent to, the commission of the crime, or the property is the primary residence of the spouse or a dependent child of the owner, and that spouse or dependent child did not know of, and consent to, the commission of the crime.

This pending legislation illustrates the apparent belief of our Legislature that real property is not currently forfeitable if it is merely used to facilitate a violation of the controlled substances act. In addition, this legislation, with its detailed procedures and exceptions to the civil forfeiture of real property, highlights the need for a narrow construction of § 7521.

I recognize that the Legislature expressly stated that the provisions of the Public Health Code, which contains the controlled substances act in article 7, are to be construed liberally "for the

protection of the health, safety, and welfare of the people of this state." MCL 333.1111(2); MSA 14.15(1111)(2). The Legislature also mandated that the provisions of the code are "intended to be consistent with applicable federal and state law and shall be construed, when necessary, to achieve that consistency. MCL 333.1111(1); MSA 14.15(1111)(1).

The Michigan Legislature fashioned its forfeiture statute after the federal statute which, at the time, did not contain an express provision regarding the forfeiture of real property used to facilitate a violation of the act. In accordance with the Legislature's mandate in § 1111(1), the Michigan statute should be construed as being consistent with the version of the federal act in effect when our statute was adopted. Congress felt it was necessary to expressly amend the federal statute, and until our Legislature takes the same action, the civil forfeiture of real property which is merely the situs of a drug transaction should not be subject to civil forfeiture under § 7521(1)(f).

In my view, there is nothing in the language or grammatical structure of § 7521 or its legislative history to support the broad construction chosen by the majority. Forfeiture may indeed be a powerful deterrent to wholesale drug dealers. It is the task of the Legislature, however, to weigh the competing policy considerations and to specify the extent to which homes and businesses are subject to civil forfeiture. Without such explicit authorization from the Legislature, and especially in view of the apparent belief of members of the current Legislature that real property is not subject to such broad civil forfeiture under § 7521, a narrow construction of this provision is appropriate.

The Court of Appeals interpreted the provision to allow for the forfeiture of real property only if

the property was furnished in exchange for a
controlled substance or traceable to an exchange
for a controlled substance, a construction of the
provision which is narrow but also renders the act
consistent as a whole. I would affirm the decision
of the Court of Appeals.