CPW INVESTMENTS #2 v CITY OF TROY

Docket No. 85882. Submitted June 10, 1986, at Lansing. Decided October 1, 1986. Leave to appeal applied for.

C.P.W. Investments #2 filed an action in the Oakland Circuit Court against the City of Troy. Plaintiff sought a refund of the sum it paid to defendant for the paving of a road abutting part of plaintiff's subdivision development. Defendant had conditioned approval of plaintiff's proposed plat upon payment for the road improvement. The trial court, Francis X. O'Brien, J., on the basis of the parties' stipulated facts, found that defendant lacked authority to withhold approval of the plat in the manner described above. However, the trial court found that plaintiff had voluntarily paid for the road improvements and, thus, was not entitled to a refund. The trial court dismissed plaintiff's complaint. Plaintiff appealed and defendant cross-appealed. Defendant claimed error in the trial court's rejection of several defenses it had raised.

The Court of Appeals *held:*

Under the Subdivision Control Act, a comprehensive statutory scheme concerning the regulation of the subdivision of land, defendant had authority to require, as a condition of plat approval, improvements to streets, alleys, roads and highways shown on the plat submitted by plaintiff. The road which was the subject of the controversy had already been dedicated to public use before plaintiff started the subdivision development and, therefore, did not have to be included in the proposed plat. However, plaintiff chose to show the road on its proposed plat and was therefore properly subject to defendant's road-improvement requirement.

Affirmed.

1. STATUTES — SUBDIVISION CONTROL ACT.
The Subdivision Control Act provides a comprehensive statutory

REFERENCES
Am Jur 2d, Zoning and Planning §§ 163-167.
Validity and construction of regulations as to subdivision maps or plats. 11 ALR2d 524.
See also the annotations in the Index to Annotations under Subdivisions.

scheme concerning the regulation of the subdivision of land; any person dividing a tract of land which results in a subdivision, as defined by the act, must submit a plat to the applicable governing body for approval (MCL 560.101 *et seq.*; MSA 26.430[101] *et seq.*).

2. MUNICIPAL CORPORATIONS — SUBDIVISIONS — PLAT APPROVAL.

   A municipality, as a condition of its approval of a proposed plat of a subdivision, may require the subdivision developer to pay for any improvements to streets, alleys, roads and highways shown in its proposed plat, including any abutting public road shown on the plat for purposes other than to provide a point of reference (MCL 560.182; MSA 26.430[182]).

*Ginn, Kramer, Jacobson & Burnstein, P.C.* (by *Marvin Kramer* and *Anne D. Warren*), for CPW Investments #2.

*John J. Martin III,* Assistant City Attorney, for the City of Troy.

Before: BEASLEY, P.J., and D. F. WALSH and HOOD, JJ.

PER CURIAM. On September 13, 1983, plaintiff, C.P.W. Investments #2, filed a complaint seeking reimbursement of sums that defendant, City of Troy, had allegedly unlawfully required it to pay for public road improvements as a condition to defendant's approval of plaintiff's residential subdivision plat located in defendant city. The parties agreed to submit the case for judgment on stipulated facts. On May 7, 1985, the trial judge filed an opinion based on the stipulated facts in which he found that defendant city lacked authority to withhold approval of a proposed plat unless plaintiff paid for improvement of a public road abutting the proposed subdivision. However, the trial judge went on to find that plaintiff, after receiving defendant city's approval of its plat in June, 1978, had

voluntarily paid for the public road improvements and, thus, was not entitled to a refund of those payments. Consequently, the trial judge entered an order dismissing the case. Plaintiff appeals as of right and defendant city cross-appeals, asserting several defenses to plaintiff's claim which were expressly rejected by the trial judge.

We first address the initial issue raised by defendant city in its cross-appeal, since our resolution of this issue renders it unnecessary to address the remaining issues raised by the parties on appeal.

Defendant city argues that the trial judge erred in finding that it did not have authority to require plaintiff subdivision developer to bear the cost of paving a portion of a city road as a condition of final plat approval. We agree with defendant and, on this basis, affirm the trial judge's dismissal of plaintiff's action.

We reach this conclusion by applying the stipulated facts in this case to the provisions of the Subdivision Control Act (SCA).[1] In applying the stipulated facts herein to the provisions of the SCA, we note that provisions of law which do address the powers of a city shall be liberally construed in their favor.[2]

The SCA provides a comprehensive statutory scheme concerning the regulation of the subdivision of land.[3] Any person dividing a tract of land which results in a subdivision, as defined by the SCA, must submit a plat to the applicable governing body for approval.[4] Sections 105 and 106 of the SCA set forth the conditions that a governing body, like defendant city, may impose for the approval

[1] MCL 560.101 et seq.; MSA 26.430(101) et seq.

[2] Const 1963, art 7, § 34.

[3] Eyde Construction Co v Charter Twp of Meridian, 149 Mich App 802, 807; 386 NW2d 687 (1986).

[4] MCL 560.103; MSA 26.430(103).

of a subdivision plat. Those sections provide in relevant part:

> Sec. 105. Approval of preliminary and final plats shall be conditioned upon compliance with:
>
> (a) The provisions of this act.
>
> (b) Any ordinance or published rules of a municipality or county adopted to carry out the provisions of this act.
>
> (c) Any published rules of a county drain commissioner, county road commission, or county plat board adopted to carry out the provisions of this act.
>
> * * *
>
> Sec. 106. No approving authority or agency having the power to approve or reject plats shall condition approval upon compliance with, or base a rejection upon, any requirement other than those included in section 105.[5]

In the within case, since, under the SCA, the Troy City Council was the approving authority, it could not, as a matter of law, condition approval of plaintiff's subdivision plat upon any requirement other than one of those encompassed by § 105. Defendant city argues that the provisions of the SCA provide it with express authority to condition approval of plaintiff's subdivision plat upon a requirement that plaintiff pay for the paving of the western half of a city road (Coolidge Road) that abutted the proposed subdivision tract. Specifically, defendant city points to MCL 560.182(1)(a),(b) and (e); MSA 26.430(182)(1) (a),(b) and (e), which states in pertinent part:

> (1) The governing body of a municipality in which the subdivision is situated may require the following as a condition of approval of final plat,

_____

[5] MCL 560.105; MSA 26.430(105); MCL 560.106; MSA 26.430(106).

for all *public* and private streets, alleys and roads in its jurisdiction:

(a) Conformance to the general plan, width and location requirements that it may have adopted and published, and greater width than shown on a county or state plan, but may not require conformance to a municipal plan that conflicts with a general plan adopted by the county or state for the location and width of certain streets, roads and highways.

(b) Proper drainage, grading and construction of approved materials of a thickness and width provided in its current published construction standards.

\* \* \*

(e) Completion of all required improvements relative to streets, alleys and roads or a deposit by the proprietor with the clerk of the municipality in the form of cash, a certified check or irrevocable bank letter of credit, whichever the proprietor selects, or a surety bond acceptable to the governing body, in an amount sufficient to insure completion within the time specified. [Emphasis added.]

In addition, MCL 560.181; MSA 26.430(181) specifically defines which streets, roads and highways are subject to the provisions of MCL 560.182; MSA 26.430(182):

All streets, alleys, roads and highways shown, or required to be shown on a plat shall comply with the requirements of sections 181 to 185 as a condition of approval of the final plat.

The stipulated facts in the within case reveal that on July 6, 1977, plaintiff submitted a subdivision plat to defendant city for final approval. The plat submitted by plaintiff included sixty-two lots and was one phase in a three-phase subdivision project that included a total of 157 proposed lots. The eastern boundary of eight of the lots included

in the plat abutted Coolidge Road, an unpaved, two lane, gravel public road. The plat also provided for direct access from Coolidge Road to the subdivision lots by way of a street known as Red Maple. The parties also stipulated to the fact that the western half of Coolidge Road along the length of the eight abutting subdivision lots lies within the legal description of the tract actually included in the plat.

On August 15, 1977, defendant city informed plaintiff that, as a condition of plat approval, plaintiff would be required to deposit cash for the paving of the western half of Coolidge Road along the eight-lot frontage of the subdivision. In response to plaintiff's objection to this condition placed on plat approval, defendant city sent a letter to plaintiff which included a copy of §§ 4.00 and 4.05 of the Troy City Code, Chapter 41—Subdivision Control, as support for its requirement that plaintiff pave Coolidge Road where it abutted the subdivision. These city code sections set out the then current master thoroughfare plan for the City of Troy and the city's published construction standards for the paving of major roads, such as Coolidge Road.

The first step in determining whether defendant city had the authority to impose the paving condition on plat approval under the provisions of the sca in this factual situation is to determine whether Coolidge Road is a road which is subject to the provisions of § 182 of the sca pursuant to MCL 560.181; MSA 26.430(181). We recognize that plaintiff was not required to include Coolidge Road in the platted tract under MCL 560.136(d); MSA 26.430(136)(d), since the land owned by plaintiff that made up the western half of Coolidge Road along the frontage of the subdivision had previ-

ously been dedicated to public use. As plaintiff points out, a previous dedication of the Coolidge Road right of way occurred under the doctrine of "highway by user" since the stipulated facts reveal that the public had used Coolidge Road without interference for over ten consecutive years prior to the time plat approval was first sought, and that defendant city had maintained Coolidge Road during the entire period of public use.[6]

However, although plaintiff was not required to show Coolidge Road in the plat, the plat actually did show the western half of Coolidge Road within the tract covered by the plat. Thus, we conclude that the western half of Coolidge Road was a road "shown" on the plat for purposes of MCL 560.181; MSA 26.430 (181). Therefore, we conclude that defendant city had authority pursuant to MCL 560.182(1); MSA 26.430(182)(1) to condition approval of plaintiff's plat on plaintiff's proper construction of improvements to the public road actually shown in the plat tract or on plaintiff's deposit of funds in an account to insure the completion of the improvements which were consistent with the master thoroughfare plan for the City of Troy and the city's published construction standards for major roads.

Plaintiff, in arguing that defendant city did not have authority to impose the paving condition upon plat approval, relies on the Michigan Supreme Court holding in *Arrowhead Development Co v Livingston County Rd Comm.*[7] The *Arrowhead* Court held that a county road commission, as an approving authority under the SCA, could not condition plat approval upon a requirement that the plaintiff subdivider pay for improvements to

---

[6] MCL 221.20; MSA 9.21; *City of St Ignace v McFarlane,* 45 Mich App 81; 206 NW2d 226 (1973).

[7] 413 Mich 505; 322 NW2d 702 (1982).

an *off-site* county road pursuant to MCL 560.183; MSA 26.430(183).

In applying the *Arrowhead* decision to the within case, we first note that the provisions of MCL 560.183; MSA 26.430 (183), which set out the conditions a county road commission may impose on plat approval, are substantially similar to the provisions of MCL 560.182; MSA 26.430(182), which set out conditions a municipality, such as defendant city, may impose on plat approval. Thus, the holding in *Arrowhead* is applicable in this case which deals with the powers of a municipality to impose conditions upon plat approval under MCL 560.182; MSA 26.430(182).

However, we believe that *Arrowhead* is distinguishable from the within case on the facts. In *Arrowhead,* the county road commission required the plaintiff subdivider to eliminate a hill and regrade a county road, since an intersection of a platted subdivision street and the county road would be hazardous if the hill was not removed. However, the hill required to be removed was located entirely outside the platted subdivision tract owned by the subdivider, and no lots were platted along the county road at the location of the hill.[8]

The *Arrowhead* Court interpreted the phrase "roads . . . shown or required to be shown on a plat" in MCL 560.181; MSA 26. 430(181) to refer only to roads *within* a proposed subdivision. Roads within a proposed subdivision are those within the parcel or tract of land in which the proprietor has an ownership interest, which is the area actually to be divided or partitioned.[9] Applying this statutory interpretation to the facts in *Arrowhead,* the Court concluded that the plaintiff subdivider had

---

[8] *Id.,* p 509.
[9] *Id.,* p 517.

merely included the county road on its plat map as a reference point to fix the location of the proposed tract to be divided or partitioned and, since the county road was not within the actual tract owned by the plaintiff to be developed and subdivided, it was not actually "shown" on the plat for purposes of MCL 560.181; MSA 26.430(181).[10]

In the within case, in contrast to the *Arrowhead* situation, the western half of the public road required to be paved as a condition to plat approval lies within the tract owned by plaintiff which was to be developed and subdivided. Although, as previously noted, plaintiff was not required to show Coolidge Road within its plat, it chose to actually show the western half of the road in the tract it owned and proposed to subdivide. In addition, eight of the proposed lots included on the plat actually abutted Coolidge Road. Furthermore, plaintiff, upon being notified that it would be required to pave the public road included within the platted tract, chose not to revise its plat so as not to include the western half of Coolidge Road as it perhaps could have done under the SCA. Instead, plaintiff continued to include the western half of Coolidge Road in its plat of the area to be developed.

In this situation, we do not believe plaintiff included the western half of Coolidge Road on its plat map merely as a reference point to fix the location of the proposed tract to be divided or partitioned. The development and improvement of the then gravel Coolidge Road appeared to be an important part of plaintiff's proposed subdivision and development of the tract of land it owned. Certainly, plaintiff could reasonably have believed that the paving of Coolidge Road would enhance

[10] *Id.*, p 518.

the value and saleability of the lots within the subdivided tract. We do not believe this factual setting is like the *Arrowhead* situation where a subdivider, as a condition to plat approval, is required to remove a hill from a public road located completely outside the proposed subdivision area for purposes of general traffic safety. Therefore, we conclude that the holding in *Arrowhead* does not dictate the result in this case, and that the western half of Coolidge Road was actually "shown" on the plat for purposes of MCL 560.181; MSA 26.430(181).

Additional support for our conclusion is found in plaintiff's actions subsequent to being informed of the condition placed on plat approval by defendant city. The stipulated facts reveal that, after initially objecting to the condition, plaintiff, on June 9, 1978, deposited $438,170 in an escrow account, $65,954 of which was for the paving of the western half of Coolidge Road. On August 21, 1978, defendant's city council granted final plat approval to plaintiff and, on June 6, 1979, over nine months later, plaintiff directed the escrow agent to release $65,954 to defendant city for the paving of Coolidge Road. During 1979, defendant city paved both the west and east sides of Coolidge Road. Plaintiff subsequently developed and disposed of all the lots within the plat.

Only after disposing of all the lots within the platted tract did plaintiff start this case in September, 1983, seeking reimbursement of the pavement funds. We do not believe that it would be equitable in this situation to allow plaintiff to provide the funds for an improvement required for plat approval, to reap the potential economic benefits of increased lot values and saleability that flow from completion of the improvement, and then to recover back the funds required for completion of

the improvement after selling all the lots within the affected plat. Such a sequence of events would raise a substantial risk that plaintiff developer might recover the cost of paying for the improvement twice. Plaintiff developer would likely have passed on the cost of the improvement to the buyers of the lots within the subdivision which were specially benefitted by the completion of the improvement. Thus, allowing plaintiff developer to subsequently recover back the funds paid to defendant plat approving agency might result in double recovery. We do not believe that plaintiff should be allowed to possibly reap such a windfall in this situation.

However, as previously indicated, even absent the equitable concerns raised by the sequence of events in this case, we believe that the liberal construction given provisions of law relating to the powers of a city leads us to the conclusion that, under the facts of this case, defendant city had authority under the SCA to require plaintiff to pay for the paving of the western half of Coolidge Road along the frontage of the subdivision as a condition to plat approval. Since we find that defendant city had statutory authority to condition approval of plaintiff's plat upon plaintiff's payment for the specified portion of Coolidge Road paving, we find that plaintiff lacks any basis that would entitle it to refund of the $65,954 that it paid defendant city in connection with final plat approval.

Affirmed.