ALTMAN v MERIDIAN TOWNSHIP

Docket No. 90316. Argued March 4, 1992 (Calendar No. 7). Decided
    June 8, 1992. Rehearing denied 440 Mich 1204.

Robert Altman and the estate of Alvin Altman, deceased, brought
    an action in the Ingham Circuit Court against Meridian Char-
    ter Township and the Meridian Township Board, seeking a writ
    of mandamus to compel the township to accept their proposed
    plat involving 8.8 acres of a fifty-three acre residential develop-
    ment providing access to Haslett Road only by connecting to an
    existing residential street. The board had rejected the proposal
    on the grounds that the connection would encourage through
    traffic and that egress onto Haslett Road provided less sight
    distance than required by Ingham County Road Commission
    plat procedure, and noted that it would be practical for the
    developers to provide secondary access to Haslett Road with
    adequate sight distance on adjoining land owned by them. The
    court, Lawrence M. Glazer, J., granted summary disposition for
    the defendants on the bases of the Subdivision Control Act,
    MCL 560.182(4)(a); MSA 26.430(182)(4)(a), the county road com-
    mission plat procedure, and the benefit the plaintiffs would
    derive from the building of the secondary access road on their
    land. The Court of Appeals, SAWYER, P.J., and MICHAEL J.
    KELLY and MURPHY, JJ., reversed in an unpublished opinion
    per curiam and remanded the case, holding that pursuant to
    *Arrowhead Development Co v Livingston Co Road Comm,* 413
    Mich 505 (1982), the township lacked the authority to require
    the construction of a secondary access road on land located
    outside the proposed plat, even if that land was owned by the
    plaintiffs and was expected to be developed in the future
    (Docket No. 115162). The defendants appeal.

REFERENCES

Am Jur 2d, Zoning and Planing §§ 163-168.

See the Index to Annotations under Maps and Plats; Subdivisions;
    Zoning.

In an opinion by Chief Justice CAVANAGH, joined by Justices LEVIN, BOYLE, and GRIFFIN, the Supreme Court *held:*

The township board acted within its authority under the Subdivision Control Act and *Arrowhead.*

1. The authority of local governing bodies to approve and disapprove proposed development plats is created and governed by the Subdivision Control Act. Section 182(4)(a) of the act provides that a plat that is isolated from or that isolates other lands from existing public streets is to be rejected unless suitable access is provided. In its common and ordinary usage, "isolated" may refer to a relatively remote or inaccessible place or area, even though there may be *some* access. In this case, it is fair usage to say that the proposed subdivision would be relatively isolated from existing public streets.

2. The remedy for isolation is the provision of suitable access, i.e., appropriate to the given purpose, not *any* access or *some* access. The township board's ability to determine suitability flows naturally from § 182(4)(a) and clearly serves the stated legislative concerns relating to public safety, the orderly use of land, and proper ingress to and egress from lots. Thus, while Creekwood Lane is a public street and would provide some access to the outside world for the proposed subdivision, the township board was entitled to conclude that it would not provide suitable access under the circumstances. Therefore, § 182(4)(a) supports the board's disapproval of the plat.

3. The township board's request that the developer construct a direct access route from the proposed subdivision across his own land, which was slated for later development, to the county road, does not conflict with *Arrowhead.* The required improvement is not outside the developer's property, nor would the required access road confer any special benefit on other persons or property without compensation or allocation of costs. Rather, it primarily would benefit the developer's property and would further his overall development plans. Nothing more has been asked of the developer than that he develop his property in a manner consistent with governing statutes, local regulations, and legitimate safety concerns.

Reversed.

Justice RILEY, joined by Justices BRICKLEY and MALLETT, dissenting, stated that the township lacked authority to reject

the plaintiffs' proposed plat pursuant to the Subdivision Control Act.

Section 182(4)(a) of the Subdivision Control Act provides for rejection by a governing body of a plat that is isolated from or that isolates other lands from existing public streets, unless suitable access is provided. In this case, the proposed plat not only has access to an existing public street currently used for vehicular travel, but was planned to conform with the township's policy of allowing single access routes for developments of fifty homes or less.

Authorities such as the township board have no inherent power to approve or reject a proposed development plat. Any power they do have is granted by the Legislature through the Subdivision Control Act. While proper zoning is a prerequisite to plat approval, a zoning plan is not a plat for purposes of the act. Because the governing body must act only within the limits of authority granted under the act, it must rely only on a plat submitted pursuant to the act, rather than on a plan submitted for rezoning purposes. In this case, the rejection of the plat was improper because it was not supported by the provisions of the Subdivision Control Act. *Arrowhead* does not control because the issue in that case did not involve whether an alteration could be required outside a plat, but, as in this case, on land owned by the developer and intended to be part of the same subdivision.

ZONING — SUBDIVISIONS — PLAT APPROVAL — TOWNSHIP BOARDS — SUBDIVISION CONTROL ACT.

In determining whether the plat of a proposed subdivision should be approved, a local governing body may reject the plat as being isolated from or isolating other lands from existing public streets, even though there is some access, where the access is not suitable, i.e., appropriate to the given purpose (MCL 560.182[4][a]; MSA 26.430[182][4][a]).

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *Donald A. Hines* and *Mark A. Bush*), for the plaintiffs.

*Foster, Swift, Collins & Smith, P.C.* (by *William K. Fahey* and *Stephen J. Rhodes*) and

*Plunkett & Cooney, P.C.* (by *James E. Tamm* and *Christine D. Oldani*), for the defendants.

Amici Curiae:

*Bauckham, Sparks, Rolfe & Thomsen, P.C.* (by *John H. Bauckham* and *Eileen W. Wicklund*), for Michigan Townships Association and Michigan Municipal League.

CAVANAGH, C.J. We address in this case the authority of a local governing body to disapprove a proposed subdivision plat pursuant to the Subdivision Control Act (SCA), MCL 560.101 *et seq.*; MSA 26.430(101) *et seq.*, and the scope of such a body's authority to place conditions on the approval of such a plat consistent with this Court's decision in *Arrowhead Development Co v Livingston Co Road Comm,* 413 Mich 505; 322 NW2d 702 (1982). We conclude that the local township board of trustees in this case acted within its authority under the SCA and *Arrowhead.*

## I. FACTS AND PROCEDURAL HISTORY

On December 15, 1987, Meridian Township granted the developer plaintiffs' request to rezone a fifty-three-acre parcel of property north of Haslett Road in Meridian Township for single-family, medium density residential development. The proposed subdivision plan submitted in connection with the rezoning provided for two access routes to Haslett Road. The first was an indirect access at the western end of the development, connecting

via a stub street, Wood Knoll Drive, to an existing subdivision cul-de-sac, Creekwood Lane, which in turn opens onto Haslett Road.[1] The second was a direct boulevard access opening directly onto Haslett Road at the eastern end of the development. The development of the overall subdivision was apparently envisioned in four stages, although the parties dispute whether it was understood, at the time of the rezoning, whether the direct access road would be built contemporaneously with the first stage of the development, or would not be completed until later stages of the development.

In any event, the developer submitted a preliminary plat for the first phase of the development, entitled Meadowbrook Estates, on March 2, 1988. This plat proposed construction of twenty-five new homes on an 8.8-acre parcel at the eastern end of the overall development area. For this initial phase of the development, access to Haslett Road was to be provided only through Creekwood Lane, and not through the direct boulevard access. As required by the SCA, the developer submitted the plat to the Ingham County Health Department, the Ingham County Drain Commission, and the Ingham County Road Commission, and obtained the necessary approvals. The road commission, however, imposed the condition, not challenged by the developer, that a direct access route to Haslett Road be built for hauling and construction purposes. The Tri-County Regional Planning Commission and the Haslett Public Schools also approved the plat.

---

[1] The existing Creekwood Lane subdivision contains twenty-five homes.

The Meridian Township Planning Commission conducted a public hearing on the plat on June 20, 1988, and heard evidence that increased traffic from the proposed development would aggravate an already dangerous traffic condition at the intersection of Creekwood Lane and Haslett Road. Nevertheless, the planning commission approved the plat on July 11, 1988, by a vote of five to three, with two of the dissenting commissioners expressing concern about the increased traffic load on the Creekwood-Haslett intersection. The planning commission's approval was subject to six conditions, none challenged by the developer. The fifth condition was that future development beyond the twenty-five homes of phase one would require the construction of the proposed direct access route to Haslett Road.

The Meridian Township Board of Trustees, the final local authority with regard to plat approval, considered the proposed plat at its regular meeting of September 20, 1988, and disapproved it by a vote of five to one. At meetings on October 3 and November 22, 1988, the board amended the minutes of its September 20 meeting to specify the reasons for its disapproval of the plat and the key condition of approval, which were adopted by a vote of five to two, as follows:

(1) The subdivision is designed in such a way as to encourage use of Creekwood [Lane] by through traffic. Such a design is not consistent with Section 101-4.12(a) of the subdivision regulations, which states that streets shall be so arranged so as to discourage their use by through traffic.

(2) The alignment of Wood Knoll Drive provides sole access onto Creekwood [Lane], which requires egress onto Haslett Road at a point where there is less than 750 feet of sight distance—in violation of Section VII.B.1 of the County Road Commission Plat Procedures. It would be practical for the proprietor to provide access to Haslett Road farther to the east, where there is 750 feet of sight distance.

The developer filed suit to overturn the disapproval of his plat on November 3, 1988, contending that (1) the township board failed properly to approve or disapprove the plat within ninety days of filing, with reasons for disapproval and conditions for approval stated in writing, in accordance with SCA § 112(2), and (2) the township board lacked substantive authority under the SCA and *Arrowhead, supra,* to disapprove the plat and condition its approval on the requirement that the developer build the direct access route to Haslett Road. The Ingham Circuit Court, on February 1, 1989, granted the township's motion for summary disposition, rejecting the developer's § 112(2) claim, finding that the board's disapproval of the plat was supported by SCA § 182(4)(a), and distinguishing *Arrowhead.* The court also stated, in its oral opinion of January 25, 1989, that the township board was entitled to require the developer to build an entrance to Haslett Road more than 750 feet east of the Creekwood-Haslett intersection, thereby indicating that the court also endorsed the board's reliance upon § VII.B.1 of the road commission plat procedures. The developer appealed.

The Court of Appeals affirmed the circuit court's ruling with regard to the § 112(2) issue,[2] but reversed with regard to SCA § 182(4)(a) and § VII.B.1 of the road commission plat procedures, and held that the township board's condition for approval violated the rule of *Arrowhead*.[3] The Court remanded the case to the circuit court to consider whether the township board's action was justified under § 101-4.12(a) of the Meridian Township Subdivision Regulations. The township applied for leave to appeal to this Court. In lieu of granting leave to appeal, we remanded the case to the circuit court for clarification of its ruling, while retaining jurisdiction. 437 Mich 1022 (1991).

On June 25, 1991, the circuit court clarified its opinion as follows:

> In the opinion granting summary disposition to Defendant (issued from the bench on January 25, 1989), this Court did, indeed, view Haslett Road as the existing public street and Creekwood [Lane] as not being "suitable access" to that public street.
>
> The Court recognizes that Creekwood is literally, a public street itself, and that it provides *some* access to the outside world.
>
> The issue is whether the legislature authorized a township to decide whether such a residential street provides "suitable" access. In this Court's

---

[2] This procedural issue does not arise before this Court because the developer did not file any cross-application for leave to appeal from the Court of Appeals decision, and the issue was not raised in the township's application for leave to appeal. We therefore express no view on the merits of that issue.

[3] Unpublished opinion per curiam, decided October 17, 1990 (Docket No. 115162).

view the legislature did grant that authority, and the township may withhold permission to develop the plat until suitable access is provided.

We then granted leave to appeal, 439 Mich 868 (1991), and we now reverse the judgment of the Court of Appeals, finding ourselves in agreement with the reasoning of the circuit court.

## II. ANALYSIS

### A. THE TOWNSHIP BOARD'S STATUTORY AUTHORITY

The authority of local governing bodies to approve and disapprove proposed subdivision plats is created and governed by the SCA. SCA § 106 provides:

> No approving authority or agency having the power to approve or reject plats shall condition approval upon compliance with, or base a rejection upon, any requirement other than those included in [SCA § ] 105.

SCA § 105 provides:

> Approval of preliminary and final plats shall be conditioned upon compliance with:
> (a) The provisions of this act.
> (b) Any ordinance or published rules of a municipality or county adopted to carry out the provisions of this act.
> (c) Any published rules of a county drain commissioner, county road commission, or county plat

board adopted to carry out the provisions of this act.

In this case, the township board asserts three grounds for its rejection of the developer's proposed plat, one deriving from each quoted subsection. The board argues that its action is supported by (1) a "provision[ ] of this act," namely, SCA § 182(4)(a), (2) a "published rule[ ] of a municipality," namely, § 101-4.12(a) of the Meridian Township Subdivision Regulations, and (3) a "published rule[ ] of a . . . county road commission," namely, § VII.B.1 of the Ingham County Road Commission Procedures for Plat Street Development.

We do not address the validity of the township board's reliance upon § 101-4.12(a) of the subdivision regulations, in view of the fact that neither the circuit court nor the Court of Appeals has passed on that issue, and we find that we need not address that issue in order to resolve this case. The three issues before this Court are the validity of SCA § 182(4)(a) and § VII.B.1 of the road commission plat procedures as bases for the township board's action and the relevance of this Court's decision in *Arrowhead*.[4]

### B. SCA § 182(4)(a)

Section 182(4)(a) of the SCA states:

---

[4] Following the initial release of our decision in this case, the parties belatedly advised us that the 1980 Ingham County Road Commission regulations of which § VII.B.1 was a part were apparently replaced by new regulations adopted in 1987, before the underlying dispute occasioning this litigation even commenced. Because of this, and because we are able to resolve this case on the basis of SCA § 182(4)(a) and *Arrowhead,* we do not discuss § VII.B.1.

The governing body shall . . . [r]eject a plat which is isolated from or which isolates other lands from existing public streets, *unless suitable access is provided.* [Emphasis added.]

The Court of Appeals held that § 182(4)(a)

does not apply to the instant situation since access to the subdivision is gained by Creekwood [Lane], an existing public street. Nor does the plat isolate any other lands from any public streets. [Slip op, p 4.]

This interpretation would preclude rejecting any plat on the basis of § 182(4)(a) unless it were *totally* isolated, without regard for the suitability of whatever minimal access to *some* public street is provided. The interpretation thus effectively rewrites § 182(4)(a) so as to eliminate the requirement of "*suitable* access."[5]

While "isolated" generally connotes detachment

---

[5] The dissent does not clarify whether it fully subscribes to the Court of Appeals analysis in this regard. Instead, the dissent, contrary to the considered factual judgment of the township board, simply offers its own opinion that the proposed Creekwood Lane access in this case is, in fact, suitable.

The dissent relies upon the township's purported "policy of allowing single accesses to developments of fifty homes or less . . . ." *Post,* p 644. Such a general policy could not, however, reasonably operate to preclude the township board from assessing the particular safe-access and other issues posed by each development. Equally untenable is the suggestion that the township's prior consent to the construction of the existing Wood Knoll Drive stub street adjoining Creekwood Lane constituted some sort of irrevocable advance consent to the development of any new subdivisions seeking to use that stub street for access. See *post,* pp 643-644. The township was not under any legal requirement, "at the time the Creekwood subdivision was developed," *post,* p 644, to give advance notice of what hypothetical future subdivisions adjoining Creekwood Lane it might approve or disapprove, and on what grounds.

or separation, it is a common and ordinary usage of the term to employ it in referring to a *relatively* remote or inaccessible place or area, even though there may well be "*some* access" to such an area.[6] It is thus a fair usage of the term to say that the proposed twenty-five-home subdivision in this case would be relatively "isolated" from Haslett Road, the main public street nearby, and therefore relatively isolated "from existing public streets."

In any event, reading § 182(4)(a) as an integrated whole, it clearly provides that the remedy for "isolation" is to provide "*suitable* access." Not just *any* access, or *some* access, but *suitable* access. It would contradict ordinary usage to deem *any* access, no matter how minimal or inconvenient, to automatically constitute *suitable* access. One standard dictionary defines "suitable" as "[a]ppropriate to a given purpose or occasion," and offers such synonyms as "fit, . . . meet, proper, appropriate, apt, fitting, happy, [and] felicitous." *The American Heritage Dictionary of the English Language: New College Edition* (1982), pp 1217, 508. "Suitable . . . implies ability to meet requirements related to a particular need or to an occasion . . . ." *Id.* at 508.

Under the Court of Appeals interpretation, if a plat starts out *totally* isolated from *any* public street, a township is free to reject the plat until

---

[6] See MCL 8.3a; MSA 2.212(1):

All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.

and unless access is provided to the plat that the township finds to be "suitable"—that is, apt, fitting, appropriate, and able to meet the requirements of the particular situation. But if a plat starts out relatively isolated from existing public streets, but possessing some minimal access via a single entrance, as in the instant case, then § 182(4)(a) allegedly does not even apply. The existing access must automatically be deemed "suitable" for purposes of § 182(4)(a), no matter how inapt, inconvenient, inadequate, and in fact *unsuitable,* such access may be. This is an incongruous interpretation. Cf. *Franges v General Motors Corp,* 404 Mich 590, 612; 274 NW2d 392 (1979) ("statutes should be construed to prevent absurdity, hardship, injustice or prejudice to the public interest").

The Court of Appeals interpretation, in effect, rewrites § 182(4)(a) to read as follows:

> The governing body shall . . . [r]eject a plat which is *totally* isolated from or which *totally* isolates other lands from *any* existing public street, unless *some* access is provided *to any existing public street.* [Emphasized words added.]

The effective excision of the term "suitable" from § 182(4)(a) violates, of course, the familiar principle of statutory construction that "[e]very word of a statute should be given meaning and no word should be treated as surplusage or rendered nugatory if at all possible." *Baker v General Motors Corp,* 409 Mich 639, 665; 297 NW2d 387 (1980).

At the very least, the foregoing analysis demonstrates that the meaning of § 182(4)(a) is open to serious question and cannot be resolved on the

basis of a purely mechanical or literal interpretation. This brings into play the broader principles that govern our interpretation of the SCA. Const 1963, art 7, § 34 states:

> The provisions of this constitution *and law* concerning counties, townships, cities and villages shall be liberally construed in their favor. *Powers granted to counties and townships by this constitution and by law shall include those fairly implied and not prohibited by this constitution.* [Emphasis added.]

We just recently reaffirmed the importance of this principle of liberal construction. See *Adams Outdoor Advertising v East Lansing,* 439 Mich 209, 218, n 14; 483 NW2d 38 (1992). Furthermore, as we have held:

> The primary and fundamental rule of constitutional or statutory construction is that the Court's duty is to ascertain the purpose and intent as expressed in the constitutional or legislative provision in question. Also, while intent must be inferred from the language used, it is not the meaning of the particular words only in the abstract or their strictly grammatical construction alone that governs. The words are to be applied to the subject matter and to the general scope of the provision, and they are to be considered in light of the general purpose sought to be accomplished or the evil sought to be remedied by the constitution or statute. [*White v Ann Arbor,* 406 Mich 554, 562; 281 NW2d 283 (1979).]

Thus, the township board's authority under § 182(4)(a) must be broadly and liberally construed in light of the stated legislative purposes of the

Subdivision Control Act, which, as set forth in the act's preamble, are, inter alia:

[T]o promote the public health, safety and general welfare; to further the orderly layout and use of land; . . . [arid] to provide for proper ingress and egress to lots . . . .

The township board's authority to determine whether the access provided to a proposed subdivision is "suitable," above and beyond the minimal existence of *any* access to *any* existing public street, flows naturally from § 182(4)(a) when that provision is interpreted in light of the principles set forth above. The township board's ability to ensure "suitability" of access clearly serves the stated legislative concerns relating to public safety, the orderly use of land, and proper ingress to and egress from lots.

In sum, we conclude that while Creekwood Lane is, technically, a public street and would provide *some* access to the outside world for the proposed subdivision, the township board was entitled to conclude that Creekwood Lane would not provide *suitable* access to the subdivision in light of all the circumstances, in particular the safety concerns regarding the Creekwood-Haslett intersection discussed more fully in part II(C). Therefore, § 182(4)(a) supports the township board's disapproval of the proposed plat.

### C. *ARROWHEAD*

Finally, the condition for plat approval imposed by the township board in this case—that the devel-

oper construct a direct access route from his initial proposed plat to Haslett Road, across the developer's own land slated for eventual development and as envisioned by the developer's own overall development plan—does not conflict with this Court's decision in *Arrowhead.* The contrary argument rests on a strained and overbroad reading of *Arrowhead* that disregards the many distinguishing features of this case.

In *Arrowhead,* the developer submitted for approval a subdivision plat adjoining Chilson Road, a public county road. A steep hill on Chilson Road threatened to create a hazardous sight obstruction for traffic entering and leaving the proposed subdivision by Navajo Trail, one of three planned entrances to the subdivision.[7] The Livingston County Road Commission approved the plat subject to the condition that the developer remove the hill on Chilson Road and perform related regrading and resurfacing work to eliminate the sight obstruction. See *id.,* 413 Mich 507-509. We stated the dispositive issue as follows:

> Whether a county road commission has authority to require a subdivision developer to make improvements on a county road located entirely outside the platted subdivision as a condition precedent to plat approval . . . . [*Id.* at 510.]

---

[7] The original proposed plat in *Arrowhead* had shown Navajo Trail as an internal cul-de-sac not connecting to Chilson Road. The Livingston County Road Commission, however, required the developer to open the cul-de-sac so as to make Navajo Trail the third access road into the subdivision. See *Arrowhead,* 413 Mich 509. This Court's decision in *Arrowhead* was influenced by the fact that the road commission itself had, in a sense, created the sight obstruction hazard that it then demanded the developer fix by making improvements to Chilson Road itself. See *id.* at 518.

Not surprisingly, we answered the question in the negative. In the first place, we noted that the county road law, MCL 224.21; MSA 9.121, places upon counties themselves the duty to maintain and improve public county roads, and specifies borrowing and taxation as the permissible methods for financing such improvements, not the imposition of such costs on the developers of nearby subdivisions. 413 Mich 512-513. In the second place, we noted that the SCA simply did not authorize a condition such as that imposed by the road commission in *Arrowhead. Id.* at 513-516. The only purported statutory basis for the disputed condition was SCA § 183(1)(b), which provides that a road commission may require "[a]dequate provision for traffic safety in laying out drives *which enter county roads and streets . . . .*" (Emphasis added.) This clearly did not authorize a requirement that the developer improve the county road itself.

We expressly emphasized two other crucially important factors in *Arrowhead.* First, we noted that conditioning plat approval on the developer's improvement of land totally outside his own property would exceed the authority of local governments under the SCA because "only the parcel or tract of land *in which the proprietor has an ownership interest* can be partitioned or divided by him . . . ." 413 Mich 517 (emphasis added). "[W]e think the Legislature cannot be said to have intended implicitly to extend the requirements of § 183(1)(b) to roads outside the subdivision which are not 'required to be shown on a plat.' " *Id.* at 518.

Second, we noted that serious constitutional problems might arise from requiring a developer to improve a public road, conferring substantial benefits on other persons and property, without any compensation or allocation of costs.

[N]owhere does there exist any statutory provision defining suitable standards governing cost allocation of off-site improvements. Apart from the constitutionality of the proposed exaction in this case, a question we neither reach nor decide, it is clear that it would be impermissible to impose the entire cost of an off-site improvement on a single subdivision developer *where other persons or property would be specially benefited. [Id.* at 519. Emphasis added.]

Significantly, this Court noted in *Arrowhead* that "under § 183(1)(b) the commission *could have required that Arrowhead lay out Navajo Trail in a way which would locate its intersection with Chilson Road at a safe distance from the hazardous sight obstruction* . . . ." 413 Mich 518 (emphasis added). This hypothetical condition bears a remarkable similarity to the condition that the township board has imposed in this case, which is essentially that the developer locate the main access road to his subdivision at a safe distance from the sight obstruction (the s-curve) on Haslett Road. The developer in this case has not been asked to remedy the sight obstruction on the county road itself, as was the developer in *Arrowhead.*

The distinctions between this case and *Arrowhead* are thus self-evident and fundamental. The disputed condition in this case would not require the developer to undertake any improvement of public land, or of any land outside his own property that he himself has slated for eventual development. The required access road would not confer any special benefits on the public or on other persons or property; it would primarily benefit the developer's own property and would further his overall development plans. As discussed in part II(B), the township board has ample statutory authority to require that the developer provide for safe and suitable access to his own proposed subdivision.

While the required access road would extend beyond the boundaries of the initial plat submitted by the developer, it does not constitute, as did the county road in *Arrowhead,* a road "outside the subdivision which [is] not 'required to be shown on a plat.'" 413 Mich 518. To the contrary, the required access road would traverse the developer's own property across the overall planned subdivision, which the developer himself has already slated for eventual platting and development.

In sum, nothing more has been asked of the developer in this case than that he develop his own property in a manner consistent with governing statutes, local regulations, and legitimate safety concerns. The duty to provide suitable access in accordance with such statutes and regulations rests with the developer. The township board's request in furtherance of that goal does

not in any way conflict with *Arrowhead,* and is, indeed, arguably endorsed by *Arrowhead.*[8]

### III. CONCLUSION

The courts cannot sit in judgment on the precise merits of the myriad discretionary and factbound decisions reached every day by democratically elected local governing bodies in the area of zoning and development. We can only review whether local governing bodies have discharged their powers in a manner consistent with applicable law. We find no basis for concluding that the township board has done otherwise in this case. We therefore reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court.

LEVIN, BOYLE, and GRIFFIN, JJ., concurred with CAVANAGH, C.J.

RILEY, J. (*dissenting*). This case arises out of the rejection by defendants township and township

---

[8] The dissent states:

Because the governing body must act only within the limits of authority given to it by the SCA, it must rely only upon a plat submitted pursuant to the SCA, rather than a plan submitted for rezoning purposes. [*Post,* pp 645-646.]

Obviously, it is the plat that is submitted that either must be approved or disapproved, with appropriate conditions, by the local governing body under the SCA. But we are aware of no authority, and the dissent cites none, that would preclude the local governing body from considering the full context of the submitted plat and any available, competent evidence bearing upon the plat, including related rezoning plans, in reaching an informed decision to approve or disapprove the plat, as long as the governing body acts in full accordance with the SCA and any other applicable laws.

board of a plat submitted by plaintiffs-developer. Because I believe that the township lacked authority to reject the plat pursuant to the Subdivision Control Act, I would affirm the decision of the Court of Appeals reversing the grant of summary disposition in favor of defendants and remanding to the trial court.

I dissent from my colleagues because SCA § 182(4)(a)[1] provides for rejection by the governing body of a plat that "is isolated from or which isolates other lands from existing public streets, unless *suitable* access is provided." (Emphasis added.) Defendants assert that a plat is to be considered "isolated" where there is no "suitable" access. Because the Creekwood-Haslett intersection is considered dangerous and unsafe, access to the proposed plat is not "suitable," and the plat is thus "isolated." Defendants conclude, therefore, that it properly rejected plaintiffs' proposed plat because it was isolated and did not provide for suitable access.

As conceded by the circuit judge, "Creekwood is literally, a public street itself, and . . . provides *some* access to the outside world." The Court of Appeals also found that "§ 182(4) does not apply to the instant situation since access to the subdivision is gained by Creekwood Drive, an existing public street." *Id.* at 4.

Twenty-five homes currently utilize Creekwood. Creekwood in fact is already equipped to accommodate an extension to a new subdivision by way of the stub street that was constructed as part of the

---

[1] MCL 560.182(4)(a); MSA 26.430(182)(4)(a).

Creekwood subdivision. The developer of the Creekwood subdivision, a different developer than in the present appeal, was permitted to prepare Creekwood for additional traffic in the future. In addition, the township has a policy of allowing single access routes for developments of fifty homes or less. Plaintiffs planned the size of the initial plat in conformance with that policy. The Creekwood subdivision has twenty-five homes, and plaintiffs' proposed development consists of twenty-five homes. Plaintiffs' proposed plat not only has access to a public street that is currently used for vehicular traffic, but, by the policy of the township, plaintiffs complied with the number of residences that could employ a single access to larger public routes. Had the township desired to limit the access to Creekwood, it would not have allowed the building of the stub street, and would have indicated at the time the Creekwood subdivision was developed that its own policy of allowing single accesses to developments of fifty homes or less would not apply to that subdivision.

Furthermore, the finding that the defendants' rejection of plaintiffs' plat was unwarranted is consistent with a fair reading of the SCA and applicable Michigan case law. Approving authorities, such as defendant township board, have no inherent power to approve or reject a proposed development plat. Any power they do have is given by the Legislature, through the SCA.[2] Section

---

[2] *Arrowhead Development Co v Livingston Co Road Comm,* 413 Mich 505, 513; 322 NW2d 702 (1982).

106 of the SCA mandates that an approving authority consider only the requirements enumerated in § 105 when determining whether to approve or reject a plat.[3] Section 105, in part pertinent to the instant case, states:

Approval of preliminary and final plats shall be conditioned upon compliance with:

(a) The provisions of this act.

(b) Any ordinance or published rules of a municipality or county adopted to carry out the provisions of this act.

(c) Any published rules of a county drain commissioner, county road commission, or county plat board adopted to carry out the provisions of this act.

In the instant case, defendants argue that they assumed a secondary access to Haslett Road would be built because it was included in plaintiffs' larger plan submitted with their rezoning request. Proper zoning is a prerequisite to plat approval. *Oakland Court v York Twp*, 128 Mich App 199, 201; 339 NW2d 873 (1983). A zoning plan is not, however, a plat for purposes of the SCA. Because the governing body must act only within the limits of authority given to it by the SCA, it must rely only upon a plat submitted pursuant to the SCA,

---

[3] See *Arrowhead*, 413 Mich 519.

rather than a plan submitted for rezoning purposes.[4]

*Our decision in Arrowhead Development Co v Livingston Co Road Comm,* 413 Mich 505; 322 NW2d 702 (1982), does not control the issue in the instant case. Whether or not an alteration could be required outside the plat, but on land owned by the developer and intended to be part of the same subdivision, was not at issue in *Arrowhead.* The road commission in *Arrowhead* required that the developer make several alterations to his plat before approval would be granted. Of all the requirements, only the one which involved land outside the submitted plat was stricken by this Court as unwarranted. The commission could have required the developer to relocate Navajo Trail, a road entirely within the boundaries of the proposed plat. 413 Mich 518. Improvements upon the county road which abutted the developer's property could not be required, for they were entirely outside the land to be partitioned and divided by the developer. *Id.*

Other cases cited by the parties do not support a contrary result. The pre-*Arrowhead* decision of *Carlson v City of Troy*[5] reflects simply that a governing body has no authority to reject a plat

---

[4] I disagree with the assumption made by the majority in n 8 of its opinion that the township may consider whatever evidence it chooses, as long as consideration of that evidence is not prohibited by the SCA. I read the SCA not as a limit on the township's authority, but rather as the sole grant of authority. If the SCA does not allow consideration of land not included within the submitted plat, then the township may not consider it.

[5] 90 Mich App 543; 282 NW2d 387 (1979).

aside from that given to it by the SCA. Therefore, the rejection of a plat not supported by provisions of the SCA, or by an ordinance enacted to carry out the provisions of the SCA, was improper, and the city could not require that the developer indicate its future subdivision plans for all lands the proprietor owned which adjoined the land within the submitted plat.

Similarly, in *Eversdyk v Wyoming City Council*[6] and *Eyde Construction Co v Meridian Charter Twp*,[7] the grounds upon which the approving authorities based their rejection of the developers' proposed plats were not supported by the SCA. In *Eversdyk*,[8] the city council rejected the plat because the city planned to rezone the area to a designation which would be incompatible with the developer's proposed development. While the SCA allows the governing authority to reject a plat on the basis of existing and published rules, rejection on the basis of proposed rules which are not yet operative was improper.

In *Eyde*,[9] the township attempted to require that the developer dedicate recreation land to the township in order to have the plat approved. Such authority is not expressed in the SCA, nor could it be fairly implied. The writ of mandamus ordering the township to remove the condition was therefore affirmed.

[6] 167 Mich App 64; 421 NW2d 574 (1988).

[7] 149 Mich App 802; 386 NW2d 687 (1986).

[8] See n 6 *supra*.

[9] See n 7 *supra*.

Only in *CPW Investments No 2 v City of Troy*,[10] was the governing authority arguably allowed to require that the developer make improvements on land that was not to be divided or partitioned. This case is also distinguishable, however. The developer owned the land in question and could have included it in his plat had it not been previously dedicated to public use under the doctrine of "highway by user." The land did not have to be included within the plat, but the Court found that it was included to enhance the value and salability of the lots within the subdivided tract, and not as a reference point to fix the location of the proposed plat to be divided. Furthermore, because the developer had presumably recouped its costs from the new owners of the development homes, the Court also applied equitable considerations in its finding that the developer should not receive a windfall from the city.[11]

Thus with all respect to my colleagues, I would hold that defendants' rejection of plaintiffs' proposed plat was not authorized by the powers conferred upon it by the SCA. I would therefore affirm the decision of the Court of Appeals, reversing the

---

[10] 156 Mich App 577; 401 NW2d 864 (1986).

[11] The Court's finding on page 583 that because the plat actually included the disputed land, the land was "shown" on the plat for purposes of the SCA, is erroneous to the extent it holds that any land indicated on a plat is to be considered land to be partitioned and divided. Property may be indicated on a plat as a tool for orientation of the platted property without being subject by the governing body to the requirement of improvement to be completed by the developer.

grant of summary disposition in favor of defendants, and remand to the trial court.

BRICKLEY and MALLETT, JJ., concurred with RILEY, J.